STATE OF MINNESOTA                                    DISTRICT COURT

COUNTY OF RAMSEY                          SECOND JUDICIAL DISTRICT
                                                    CASE TYPE: OTHER CIVIL

Reverend Tim Christopher, Sarah Cade                Court File No. 62-CV-21-4223
Hauptman, and the Minnesota Gun Owners
Caucus,

                          Plaintiffs,                        **SUMMONS**

v.

Ramsey County, Bob Fletcher, in his official
capacity as Ramsey County Sheriff, and the
State Agricultural Society,

                          Defendant.

THIS SUMMONS IS DIRECTED TO Ramsey County, Bob Fletcher, in his official capacity as

Ramsey County Sheriff, and the State Agricultural Society.

     1.   **YOU ARE BEING SUED**. Plaintiffs have started a lawsuit against you. The
Plaintiffs' Complaint against you is attached to this summons. Do not throw these papers away.
They are official papers that affect your rights. You must respond to this lawsuit even though it
may not yet be filed with the Court and there may be no court file number on this summons.

     2.   **YOU MUST REPLY WITHIN 21 DAYS TO PROTECT YOUR
RIGHTS**. You must give or mail to the person who signed this summons **a written response**
called an Answer within 21 days of the date on which you received this Summons. You must send
a copy of your Answer to the person who signed this summons located at:

**TAFT STETTINIUS & HOLLISTER LLP**
Scott M. Flaherty (#388354)
2200 IDS Center
80 South 8th Street
Minneapolis, MN 55402-2157
Telephone: (612) 977-8400
Fax:      (612) 977-8650
Email: sflaherty@taftlaw.com

     3.   **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written
response to the Plaintiffs' Complaint. In your Answer you must state whether you agree or
disagree with each paragraph of the Complaint. If you believe the Plaintiffs should not be given
everything asked for in the Complaint, you must say so in your Answer.

4.      **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 21 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the complaint. If you do not want to contest the claims stated in the complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the complaint.

5.      **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case**.

6.      **ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Dated: August 10, 2021

**TAFT STETTINIUS & HOLLISTER LLP**

By:___*s/ Scott M. Flaherty*_____
        Scott M. Flaherty (#388354)
        Andrew S. Dosdall (#0391076)
2200 IDS Center
80 South 8th Street
Minneapolis, MN  55402-2157
Telephone:  (612) 977-8400
Fax:           (612) 977-8650
Email:        sflaherty@taftlaw.com
                adosdall@taftlaw.com

**ATTORNEYS FOR PLAINTIFFS**
**Reverend Tim Christopher, Sarah Cade Hauptman, and the Minnesota Gun Owners Caucus**

## ACKNOWLEDGMENT

The undersigned acknowledges the sanctions provision of Minn. Stat. § 549.211, subd. 3.

_____*s/ Scott M. Flaherty*_____

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

STATE OF MINNESOTA                                    DISTRICT COURT

COUNTY OF RAMSEY                              SECOND JUDICIAL DISTRICT
                                                CASE TYPE:  OTHER CIVIL

---

Reverend Tim Christopher, Sarah Cade              Court File No. 62-cv-21-_____
Hauptman, and the Minnesota Gun Owners
Caucus,

                    Plaintiffs,

v.                                                    **COMPLAINT**

Ramsey County,
Bob Fletcher, in his official capacity as
Ramsey County Sheriff, and
the State Agricultural Society,

                    Defendants.

---

Plaintiffs allege against Defendants as follows:

## INTRODUCTION

1.      The Second Amendment to the U.S. Constitution "guarantee[s] the individual right to possess and carry" firearms. *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008). The right to "bear arms," according to the U.S. Supreme Court, includes the ability to "wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person." *Id.* at 584. In *McDonald v. City of Chicago*, 561 U.S. 742, 750, 791 (2010), the Supreme Court confirmed that the rights protected by the Second Amendment are "among those fundamental rights necessary to our system of ordered liberty," and held that the Second Amendment is incorporated as applicable to the states through the Fourteenth Amendment.

2.      Minnesota state public policy regarding the right to keep and bear arms is clear. "The legislature of the state of Minnesota recognizes and declares that the second amendment of

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

the United States Constitution guarantees the fundamental, individual right to keep and bear arms. The provisions of this section are declared to be necessary to accomplish compelling state interests in regulation of those rights." Minn. Stat. § 624.714, subd. 22.

3.     Minnesota law supersedes and preempts any inconsistent local regulation regarding the carrying or possession of pistols. *See* Minn. Stat. § 471.633 ("The legislature preempts all authority of a home rule charter or statutory city including a city of the first class, county, town, municipal corporation, or other governmental subdivision, or any of their instrumentalities, to regulate firearms, ammunition, or their respective components to the complete exclusion of any order," excluding regulation of discharge of firearms, and providing "[l]ocal regulation inconsistent with this section is void." ); Minn. Stat. § 624.717 (providing that the Minnesota Citizens' Personal Protection Act of 2003 supersedes any local regulation the carrying or possessing of pistols).

4.     Minn. Stat. § 624.714 establishes the nature and scope of permits to carry and provides that "[n]o sheriff, police chief, governmental unit, government official, government employee, or other person or body acting under color of law or governmental authority may change, modify, or supplement these criteria or procedures, or limit the exercise of a permit to carry."

5.     Minnesota law allows permitted carry even inside the state capitol—an area more serious than the light-hearted State Fair. In order to carry a firearm at the Minnesota State Capitol Complex, a person only need have a valid Minnesota permit to carry. *See* Minn. Stat. § 609.66, subd. 1g(b) & (c).

6.     Plaintiffs wish to exercise their fundamental, constitutionally and statutorily protected right to carry loaded, operable handguns on their person, at the annual Minnesota State

2

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

Fair, for lawful purposes including immediate self-defense. But they cannot because of the laws, regulations, policies, practices, and customs that Defendants have been enforcing and continue to actively enforce today.

## PARTIES

7.   Plaintiff Rev. Tim Christopher is a U.S. citizen and resident of Anoka County who preaches in North Minneapolis. He has carried his pistol more or less daily for the past eight years. He and his family are regular attendees to the State fair. He has seen a rise in crime, and for the work he does, Rev. Christopher believes it's important to have a way to protect himself, including at the State Fair. He intends to attend the 2021 Minnesota State Fair.

8.   Absent relief from the court, based on a real risk and credible fear of arrest, prosecution, monetary sanction, and incarceration pursuant to Minn. Stat. § 37.16,   Rev. Christopher will be unable to exercise his constitutionally and statutorily protected right to carry a loaded, operable pistol at the annual Minnesota State Fair, for lawful purposes.

9.   Plaintiff Sarah Cade Hauptman is a U.S. citizen and resident of Ramsey County and a member of Plaintiff Minnesota Gun Owners Caucus. She been going to the Minnesota State Fair for as long as she can remember. She received her permit to carry a firearm in 2013, and has been a responsibly armed citizen ever since. She wishes to carry at the State Fair for the purpose of self-defense, and would not pose any threat or danger to the public. She intends to attend the 2021 Minnesota State Fair.

10.   Absent relief from the court, based on a real risk and credible fear of arrest, prosecution, monetary sanction, and incarceration pursuant to Minn. Stat. § 37.16,   Plaintiff Hauptman will be unable to exercise her constitutionally and statutorily protected right to carry a loaded, operable pistol at the annual Minnesota State Fair, for lawful purposes.

3

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

11.     Plaintiff Minnesota Gun Owners Caucus is a 501(c)(4) Minnesota non-profit corporation organized under Minn. Stat. ch. 317A. MGOC seeks to protect and promote the right of citizens to keep and bear arms for all lawful purposes. MGOC serves its members and the public through advocacy, education, elections, legislation, and legal action. MGOC's members reside both within and outside Minnesota. MGOC brings this action on behalf of its members, including the named Plaintiffs herein. MGOC's Minnesota members have been adversely and directly harmed by Defendants' enforcement of the laws, regulations, policies, practices, and customs challenged herein.

12.     Defendant Bob Fletcher is sued in his individual capacity and in his official capacity as Sheriff of Ramsey County. As sheriff, he is responsible for administering and enforcing in his County the State's laws, regulations, policies, practices, and customs concerning the carrying of weapons. *See, e.g.*, Minn. Stat. § 624.714 ("Applications by Minnesota residents for permits to carry shall be made to the county sheriff where the applicant resides.").

13.     Defendant Ramsey County is a county pursuant to Minn. Stat. ch 383A having the general powers and duties proscribed by state law.

14.     Defendant State Agricultural Society is a public corporation. *See* Minn. Stat. 37.01. The Agricultural Society exists pursuant to state law. The Agricultural Society has capacity to sue and be sued.

### JURISDICTION AND VENUE

15.     This is a civil action for declaratory judgment and injunctive relief relating to the Minnesota Citizens Personal Protection Act, or "carry law." Minn. Stat. § 624.714 and

16.     This Court has subject matter jurisdiction as a court of general jurisdiction.

17.     Venue is proper in this judicial district.

4

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

## FACTS

**The Agricultural Society's Character as a Governmental Subdivision with Criminal Power**

18.     The Agricultural Society is a public corporation.

19.     The Agricultural Society is a department of the state. Minn. Stat. § 37.14; *Berman v. Minn. State Agr. Society*, 93 Minn. 125, 128, 100 N.W. 732, 733 (1904).

20.     The Agricultural Society is a governmental subdivision pursuant to Minn. Stat. § 471.633.

21.     The Agricultural Society is the type of entity that is "an arm or agency of the state." *Berman*, 93 Minn. at 129, 100 N.W. at 733.

22.     Officers of the Agricultural Society are "servants of the state performing governmental duties and functions." *Id.*

23.     The Agricultural Society is "directly under the exclusive authority of the state, which may change its officers or its organization and provide for different regulations for the government of the fair, as the best interest of the public may, in the judgment and wisdom of the Legislature" decides. *Id.*

24.     State law allows the Agricultural Society to make bylaws, ordinances, and rules "of a legislative character similar to that conferred upon municipalities." *Id.*

25.     The Agricultural Society's bylaws, ordinances, and rules must be "consistent with law" under Minn. Stat. § 37.16.

26.     The Agricultural Society's bylaws, ordinances, and rules are not effective until filed with the secretary of the society. Minn. Stat. § 37.16.

27.     A violation of one of Agricultural Society's validly promulgated bylaws, rules, or ordinances is a misdemeanor. Minn. Stat. § 37.16.

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

28.     The Agricultural Society delegates represent all 87 county fairs in Minnesota, along with delegates from various regional and statewide agricultural groups.

29.     Those delegates annually elect a 10-member board of managers to set policy and provide oversight for the fair. Nine members represent the Agricultural Society's nine regional districts, and the 10th member serves at large.

30.     The State Agricultural Society is responsible for all capital work and maintenance of the 322-acre fairgrounds, which is state property.

31.     Jerry Hammer is the Agricultural Society's general manager.

32.     Jerry Hammer is the Agricultural Society's secretary.

33.     A copy of the Minnesota State Agricultural Society Rules is attached hereto as Exhibit 4 ("2021 Agricultural Society Rules"). These are available at https://assets.mnstatefair.org/pdf/competition/21-rules-regs.pdf (last visited July 31, 2021). These rules were promulgated pursuant to authority granted the Minnesota State Agricultural Society by Minn. Stat. § 37.16.

34.     The 2021 Agricultural Society Rules were approved during the Agricultural Society's most recent January meeting.

35.     The 2021 Agricultural Society Rules do not prohibit carrying a pistol by a person holding a permit to carry under state law.

**Prior fairs; Changes in advance of 2021 State Fair**

36.     The Agricultural Society decided not to hold the 2020 Minnesota State Fair due to the COVID-19 pandemic.

37.     In May 2021, Paul Paulos the then-chief of police for the State Fair police retired.

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

38.    After Chief Paulos' retirement, the Agricultural Society's Mr. Hammer decided it would be best to hire an outside law enforcement agency rather than make equipment upgrades and training improvements that Chief Paulos had recommended.

39.    Previously, the State Fair Police Department had coordinated fair security with its own staff and paid volunteers from law enforcement agencies around the state.

40.    Plaintiff MGOC has been informed, on an off-the-record basis, that previously, until at least 2016, former Chief Paulos would issue carry permits to select vendors and exhibitors without an official, formal application process. Former Chief Paulos would allow vendors and exhibitors who held these permits to possess pistols on the fairgrounds during the State Fair.

**Joint Powers agreement between Agricultural Society and Ramsey County, RCSO.**

41.    After the Agricultural Society disbanded the State Fair's existing police department, it wished to partner with another law enforcement agency for the 2021 State Fair.

42.    Minnesota law allows political subdivisions to enter into Joint Powers agreements with each other to jointly or cooperatively exercise any power common to the contracting parties. *See* Minn. Stat. § 471.59, subd. 1.

43.    Agricultural Society is a political subdivision of the state such that is has capacity to enter into a joint powers agreement under Minn. Stat. § 471.59, subd. 1(b).

44.    Ramsey County, on behalf of the Ramsey County sheriff's office, entered into a joint Powers agreement with the Agricultural Society.

45.    Attached as Exhibit 1 to this complaint is a true and correct, but unsigned, copy of the Joint Powers Agreement.

46.    The Ramsey County Board approved the Joint Powers Agreement on Tuesday July 27, 2021.

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

47.    Hammer has executed the Joint Powers Agreement on behalf of the Agricultural Society.

48.    The Joint Powers Agreement is effective from August 25th 2021 through September 6th 2021.

49.    Under the Joint Powers Agreement, Defendant Ramsey County through Defendant Sheriff Fletcher's office, agreed to provide law enforcement services to the Agricultural Society. These security services including patrolling all areas of the fairgrounds, enforcement of state law, and enforcement of the Agricultural Society's bylaws, rules, and ordinances.

50.    The Joint Powers Agreement gives Defendant Ramsey County, through Sheriff Fletcher's office, sole control over the manner and standards of performance, the discipline of law enforcement officers, and other matters related to the provision of the security services under that agreement.

51.    Defendant Sherriff Fletcher has final, conclusive decision-making authority between the parties to the Joint Powers Agreement in the event of a dispute between them as to the extent of the duties and functions to be rendered under that agreement.

52.    Defendant Sherriff Fletcher has ultimate command of law enforcement matters within the fairgrounds during the term of the Joint Powers Agreement.

53.    Defendant Agricultural Society promised full cooperation of its officers, agents, and employees to Ramsey County and Sheriff Fletcher.

54.    Under the Joint Powers Agreement, the Agricultural Society accepts responsibility for the acts or emissions of County and Sheriff employees, officials, representatives, and agents acting within the scope of the Joint Powers Agreement.

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

55.     The Agricultural Society promised to defend and indemnify the Ramsey County and Sheriff Fletcher under the Joint Powers Agreement for any claim or lawsuit against the County or the Sheriff related to the County's performance of duties under the Joint Powers Agreement.

56.     Under the Joint Powers Agreement, the Agricultural Society and Ramsey County agreed to be considered "a single governmental unit" determining total liability for damages under Minn. Stat. § 471.59, subd. 1a(b).

57.     The Agricultural Society is indemnified by the State of Minnesota pursuant to Minn. Stat. § 3.723.

## MGOC Data Practices Act Requests

58.     As a public corporation, the Agricultural Society is a "government entity" subject to the MGDPA. *See* Minn. Stat. § 13.02, subd. 7a.

59.     The Agricultural Society is a "political subdivision" pursuant to the MGDPA, as a "political subdivision" includes an entity created pursuant to law. *See* Minn. Stat. § 13.02, subd. 11.

60.     In response to a data practices act request, on February 12, 2013, an attorney for the Agricultural Society wrote that the Agricultural Society does not have any written policies, procedures, or protocols regarding firearms.

61.     On December 15, 2015, an attorney for the Agricultural Society wrote that the Agricultural Society "does not have any written policy concerning regulation of guns on the fairgrounds."

62.     The Agricultural Society does not have any written policy concerning regulation of guns on the fairgrounds.

9

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

63.     On June 28, 2021, the MGOC made another data practices act request to the Agricultural Society. That request sought five categories of government data. Attached as Exhibit 2 is a true and correct copy of the request.

64.     In response to that request, an attorney for the Agricultural Society responded on July 9, 2021. Attached as Exhibit 3 is a true and correct copy of that July 9, 2021 response.

65.     The Agricultural Society's July 9, 2021 response admitted the Agricultural Society does not have a data inventory policy required by Minn. Stat. § 13.025, subd. 1; a public data access policy required by Minn. Stat. § 13.025, subd. 2; and a data subject rights and access policy required by Minn. Stat. § 13.025, subd. 3.

66.     The Agricultural Society's July 9, 2021 response provided no copies of any bylaws, ordinances, or rules, as those terms are used in Minn. Stat. § 37.16, that had been filed with the secretary of the Agricultural Society and were in force. Instead, that letter referenced https://www.mnstatefair.org/faq/.

67.     The Agricultural Society's website's identification of prohibited items, https://www.mnstatefair.org/faq/allowed-and-prohibited-items/ ("Website FAQs"), are not "bylaws, ordinances, and rules consistent with law" within the meaning of Minn. Stat. § 37.16.

68.     The Website FAQs disclaim their own accuracy. For example, at https://www.mnstatefair.org/faq/health-and-safety/ (last visited July 31, 2021), it prominently states "Please note: This information has not yet been updated for 2021. Please check back in the spring and summer!"

69.     Posting a document to a website does not constitute the act of filing "with the secretary of the society" within the meaning of Minn. Stat. § 37.16.

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

70.    Minn. Stat. § 37.16 does not authorize the Agricultural Society to promulgate bylaws, ordinances, and rules within the meaning of Minn. Stat. § 37.16 simply by updating a website. Validly promulgating rules is a serious act, as violations are a crime. Criminal laws cannot be validly enacted on the fly via surreptitious website updates.

71.    The State Agricultural Society purports to prohibit from the 2021 State Fair all weapons including pistols, but in fact has not lawfully promulgated any such prohibition.

72.    Alternatively, to the extent there exists an undisclosed but lawfully promulgated bylaw, regulation, or ordinance, filed with the secretary of the society under Minn. Stat. § 37.16, the Agricultural Society violated the MGDPA by not disclosing it in the Society's July 9, 2021 response.

73.    The Agricultural Society's Website FAQs have not been "filed with the secretary of the society" within the meaning of Minn. Stat. § 37.20.

74.    Although the Website FAQs states that firearms are not allowed on the fairgrounds, Agricultural Society has not, in fact, promulgated any bylaws, ordinances, or rules within the meaning of Minn. Stat. § 37.20, prohibited firearms on the grounds.

75.    The Agricultural Society board, and not its general manager or secretary, has the authority to promulgate bylaws, ordinances, or rules within the meaning of Minn. Stat. § 37.20.

76.    The Agricultural Society board of managers has not regulated the possession of firearms on the fairgrounds.

77.    Minnesotans who have a permit to carry pistols under Minn. Stat. § 624.714 may lawfully carry a pistol on the fairgrounds during the State Fair.

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

78.     Nonetheless, if Rev. Christopher or Ms. Hauptman, or any other MGOC members attempt to enter the State Fair while carrying a pistol, they will be refused entry under the Agricultural Society's website's prohibitions on firearms.

79.     If Ramsey County or its employees, officials, representatives, or agents determine that Rev. Christopher or Ms. Hauptman, or any other permit-carrying MGOC members possess a pistol inside the fairgrounds during the 2021 State Fair, such a permit-holder will, by virtue of that possession, be treated as having violated a valid, effective bylaw, ordinance or rule of the Agricultural Society, which is a criminal misdemeanor under Minn. Stat. § 37.16.

80.     If Sheriff Fletcher, or any other law enforcement personnel directly or indirectly subordinate to him, determine that Rev. Christopher or Ms. Hauptman, or any other permit-carrying MGOC members possess a pistol inside the fairgrounds during the 2021 State Fair, such a permit-holder will, by virtue of that possession, be treated as having violated a valid, effective bylaw, ordinance or rule of the Agricultural Society, which is a criminal misdemeanor under Minn. Stat. § 37.16.

### COUNT 1—Permit-to-carry declaratory and injunctive relief
### (*All Plaintiffs against all Defendants*)

81.     The foregoing paragraphs are hereby incorporated herein as if set forth in full.

82.     Plaintiffs are entitled to declaratory relief pursuant to Minn. Stat. Ch. 555.

83.     The Court may also issue injunctive relief pursuant to Minn. Stat. § 555.08.

84.     As detailed below, Plaintiffs seek declaratory and injunctive relief in forms sufficient to allow them to lawfully carry a pistol on the fairgrounds during the State Fair.

### COUNT 2—Data practices act relief under (*MGOC against Agricultural Society*)

85.     The foregoing paragraphs are hereby incorporated herein as if set forth in full.

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

86.     Plaintiffs are entitled to declaratory relief pursuant to Minn. Stat. Ch. 555 and Minn. Stat. § 13.08 subds. 2 & 4.

87.     The Court may also issue injunctive relief pursuant to Minn. Stat. § 555.08 and Minn. Stat. § 13.08, subd. 2.

88.     The Agricultural Society has failed to update and ensure accuracy of data inventory pursuant to Minn. Stat. § 13.025, subd. 1.

89.     The Agricultural Society has failed to update and ensure accuracy of public data access policy pursuant to Minn. Stat. § 13.025, subd. 2.

90.     The Agricultural Society has failed to update and ensure accuracy of data subject rights and access policy pursuant to Minn. Stat. § 13.025, subd. 3.

## DEMAND FOR RELIEF

91.     WHEREFORE, Plaintiffs request judgment be entered against Defendant as follows:

a.  Enter a judgment in favor of Plaintiffs and against Defendants for declaratory relief specifying that Minnesotans who hold a permit to carry a pistol valid under state law may not be excluded or ejected from the Minnesota State Fair;

b.  Issue injunction prohibiting Defendants, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them, from:

    (i)     excluding from the 2021 State Fair any person who has a permit to carry a pistol on the basis that such a person possesses a firearm;

    (ii)    ejecting or removing from the 2021 State Fair any person who has a permit to carry a pistol on the basis that such a person possesses a firearm;

    (iii)   enforcing the following:

        (1)     any purported or actual bylaw, rule, or ordinance of the Agricultural Society contrary to Minn. Stat. § 471.633;

13

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

      (2)      any purported or actual bylaw, rule, or ordinance of the Agricultural Society contrary to Minn. Stat. § 624.717;

      (3)      any purported or actual power shared pursuant to Defendants' Joint Power Agreement contrary to Minn. Stat. § 471.633;

      (4)      any purported or actual power shared pursuant to Defendants' Joint Power Agreement contrary to Minn. Stat. § 624.717; and

   (iv)      taking any other adverse action against any person who has a permit to carry a pistol on the basis that such a person possesses a firearm during the 2021 State Fair.

c.   An order requiring Agricultural Society to promulgate a data inventory policy required by Minn. Stat. § 13.025, subd. 1; a public data access policy required by Minn. Stat. § 13.025, subd. 2; and a data subject rights and access policy required by Minn. Stat. § 13.025, subd.;

d.   Impose a civil penalty against Agricultural Society under Minn. Stat. § 13.08, subd. 4 and order "ongoing training" to Agricultural Society's entity personnel under that same subdivision;

e.   Award Plaintiffs' full costs, expenses, and reasonable attorney's fees incurred in this action; and

f.   Such other, different, and further relief as this Court deems just and proper.

14

62-CV-21-4223

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

Dated:  August 10, 2021

**TAFT STETTINIUS & HOLLISTER LLP**

By:  *s/ Scott M. Flaherty*
    Scott M. Flaherty (#388354)
    Andrew S. Dosdall (#391076)
2200 IDS Center
80 South 8th Street
Minneapolis, MN  55402-2157
Telephone:  (612) 977-8400
Fax:         (612) 977-8650
Email:      sflaherty@taftlaw.com
          adosdall@taftlaw.com

**ATTORNEYS FOR PLAINTIFFS
Reverend Tim Christopher, Sarah Cade
Hauptman, and the Minnesota Gun Owners
Caucus**

15

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

## JOINT POWERS AGREEMENT
## BETWEEN RAMSEY COUNTY AND
## THE MINNESOTA STATE AGRICULTURAL SOCIETY
## FOR LAW ENFORCEMENT SERVICES

This Joint Powers Agreement ("Agreement") is between Ramsey County ("County") and the Minnesota State Agricultural Society ("Agricultural Society"). The County and the Agricultural Society (collectively, the "Parties") enter into this Agreement pursuant to Minnesota Statutes Sections 37.20 and 471.59.

This Agreement is effective from August 25, 2021, through September 6, 2021.

## I.     Background & Purpose

Over 2,000,000 people attended the 2019 State Fair. The Parties anticipate similar attendance at the 2021 State Fair.

In May 2021, the Agricultural Society disbanded the State Fair's existing police department, instead wishing to partner with another law enforcement agency to provide law enforcement services on the Fairgrounds during the 2021 State Fair. The Minnesota Department of Public Safety recommended that the Ramsey County Sheriff's Office ("RCSO") was the appropriate choice to provide law enforcement services as the lead law enforcement agency.

The County, on behalf of the RCSO, agrees to provide law enforcement services on the Fairgrounds provided that the Agricultural Society agrees to defend and indemnify and be responsible for the acts and omissions of the County and its employees, officials, agents, and representatives from any liability arising from the provision of services under this Agreement, as provided by Minnesota Statutes Section 471.59, subdivision 1a(a). The purpose of this Agreement is to set forth the terms under which the County, through the RCSO, will provide law enforcement services to the Agricultural Society during the 2021 State Fair.

In consideration of the mutual terms and conditions, promises, covenants, and payments of this Agreement, the County and the Agricultural Society agree as follows:

## II.    County Responsibilities

1.  The County, through the RCSO, will provide law enforcement services to the Agricultural Society including but not limited to:
    a.  Patrol services of all areas of the Fairgrounds, as defined in Minnesota Statutes Section 37.01;
    b.  Enforcement of state law or any rule, bylaw, or ordinance of the Agricultural Society, consistent with Minnesota Statutes Section 37.20;
    c.  Criminal investigative services and crime-scene-processing services;
    d.  Follow up on reported crimes with persons who reported the crime, including notification as to the status of the investigation;
    e.  Responses to reports of criminal activity and medical, fire, and other emergencies; and

EXHIBIT 1 to Complaint

62-CV-21-4223

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

    f.  Provide a detailed operations plan for the delivery of service outlined by this Agreement.

2.    The manner and standards of performance, the discipline of law enforcement officers, and other matters incident to the provision of services under this Agreement lies solely within the control of the County, through the RCSO. In the event of a dispute between the parties as to the extent of the duties and functions to be rendered hereunder, or the level or manner of performance of such service, the determination thereof made by the Sheriff of the County shall be final and conclusive as between the parties hereto, subject however, to the provisions of Section II.3. herein.

3.    In the event the Agricultural Society notifies the County, through the RCSO, that the Agricultural Society is dissatisfied with the assignment of personnel for the performance of services under this Agreement and requests a change in personnel, the County, through the RCSO, shall make every effort to effect a change in the assignment of personnel, provided that such a change does not jeopardize the ability of the Ramsey County Sheriff to fulfill his duties under state law.

4.    Services shall be provided 24 hours per day and shall be performed by the number of deputies and other personnel listed in Section IV.1 of this Agreement. The County, through the RCSO, shall ensure that enough law enforcement officers, up to 200 per day, are providing law enforcement services at the Fairgrounds.

5.    The County, through the RCSO, shall furnish and supply the labor, supervision, equipment, and supplies necessary to provide services pursuant to this Agreement, including, but not limited to:
    a.  foot patrol;
    b.  squad patrol;
    c.  watch commander;
    d.  investigations;
    e.  custody/transports;
    f.  response teams;
    g.  records management system;
    h.  communications facilities and dispatching, as provided in the June 18, 2019 Joint Powers Agreement between the Agricultural Society and Ramsey County;
    i.  payroll;
    j.  vehicles;
    k.  uniforms; and
    l.  body-worn cameras.

EXHIBIT 1 to Complaint

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

6. The County, through the RCSO, will distribute State Fair service pins, as described in Section III.4, to those law enforcement officers who have worked in a law enforcement capacity at the State Fair for 5, 10, 15, 20, or 25 years.

## III. Agricultural Society Responsibilities

1. The Agricultural Society will provide the following at no cost to the County:

   a. admission tickets for RCSO staff working pursuant to this Agreement;
   b. barricade passes;
   c. no fewer than ten parking spaces for law enforcement vehicles along West Dan Patch Avenue;
   d. sufficient parking for personally owned vehicles for RCSO staff near the northwest portion of the Fairgrounds near West Dan Patch Avenue and Randall Avenue;
   e. secure container storage, such as a PODS storage unit, for RCSO equipment;
   f. secure storage for County-owned golf carts and all-terrain vehicles;
   g. fuel from nearby pumps for use in official County vehicles;
   h. car wash tokens for official County vehicles;
   i. golf carts, if requested by the RCSO;
   j. joint use of the Arthur R. Blakey, Jr. Police Station with the Minnesota State Patrol;
   k. security fencing surrounding the Arthur R. Blakey, Jr. Police Station;
   l. access to the Emergency Operations Center;
   m. office equipment and supplies needed at either the Arthur R. Blakey, Jr. Police Station or the Emergency Operations Center;
   n. janitorial services;
   o. air-conditioned trailer(s) for breaks;
   p. secure, password-protected Wi-Fi access;
   q. first aid kits;
   r. mass casualty kits;
   s. automatic external defibrillators (AEDs);
   t. water, ice, and coolers;
   u. impound lot services;
   v. camera trailer(s); and
   w. keys, radio-frequency identification (RFID) cards, or any other device needed for access to all areas of the Fairgrounds.

**EXHIBIT 1 to Complaint**

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

2. The Parties agree that ultimate command of law enforcement matters on the Fairgrounds rests with the RCSO during the term of this Agreement.

3. The Agricultural Society shall be responsible for security screening at entrance points to the Fairgrounds, including bag checks and the use of magnetometers. The County, through the RCSO, will not be responsible for security screening, bag and container checks, or other components of admittance to the Fairgrounds. The County, through the RCSO, will not be responsible for security, security screening, or ingress or egress to the State Fair parking lots.

4. The Agricultural Society shall provide law enforcement service pins for those law enforcement officers who have worked in their capacity as a law enforcement officer at the State Fair for 5, 10, 15, 20, or 25 years.

5. The Agricultural Society agrees that the County shall have full cooperation and assistance from the Agricultural Society and its officers, agents, and employees. The Agricultural Society shall designate a liaison to the RCSO. The liaison shall represent the Agricultural Society at planning meetings related to the State Fair.

## IV. Billings and Payment

1. The Agricultural Society shall pay the County $80 per hour per employee for the services described in Section II of this Agreement, except in the case of Labor Day, where the Agricultural Society shall pay the County $100 per hour per employee. Staffing will include 24-hour coverage, training, community outreach, supervision, and management, as listed below, including the 12 days of the State Fair and a training day on August 25, 2021.

> 40 officers, 10-hour shifts
> 130 officers, 8-hour shifts
> 8 community ambassadors, 10-hour shifts

The Agricultural Society shall additionally reimburse the County, through the RCSO, for mileage at half the current General Services Administration (GSA) rate for mileage incurred with County vehicles during the provision of law enforcement services. The reduced GSA rate is acceptable to the Parties in light of the items provided by the Agricultural Society pursuant to Section III.1 of this Agreement.

The Agricultural Society is responsible for all costs related to agreements with the Minnesota State Patrol.

2. The Agricultural Society shall pay County invoices sent pursuant to this Agreement within 30 days.

**EXHIBIT 1 to Complaint**

62-CV-21-4223

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

3.  The Parties agree that the County will, at the very least, recover its costs for providing law enforcement services to the Agricultural Society for the 2021 State Fair.  Following the conclusion of the County's provision of services under this Agreement, the County shall prepare an accounting of all its costs incurred under this Agreement.  The Agricultural Society agrees to reimburse all County costs incurred under this Agreement.

## V.  General Terms

1.  **Public Data:**  All data collected, created, received, maintained, or disseminated for any purpose in the course of either Party's performance of this Agreement are governed by the Minnesota Government Data Practices Act ("MGDPA"), Minnesota Statutes Chapter 13, and any other applicable statutes and rules.  The County shall be responsible for maintaining such data consistent with the MGDPA following the conclusion of the County's provision of services under this Agreement.

2.  **Compliance with Applicable Laws:**  The Parties agree to comply with all federal, state, and local laws or ordinances, and all applicable rules, regulations, and standards established by any agency of such governmental units insofar as they relate to the Parties' performance under this Agreement.

3.  **Conflict of Interest:**  The Parties agree that they will not contract nor accept employment for the performance of any work or services with any individual, business, corporation, or governmental unit that would create a conflict of interest in the performance of this Agreement.

4.  **Liability:**  Pursuant to the provisions of Minnesota Statutes Section 471.59, subdivision 1a(a), the Agricultural Society agrees to be responsible for the acts or omissions of the County and its employees, officials, representatives, and agents in connection with this Agreement.  Accordingly, the Agricultural Society agrees to provide for the full coverage, defense, and indemnification of the County and its employees, officials, representatives, and agents from all claims arising from or in any way related to the provision of services under this Agreement.  The Agricultural Society further agrees to defend and indemnify the County for any property damaged or lost in connection with this Agreement.  As such, the Parties agree that their liability shall be governed by Minnesota Statutes Section 471.59, subd. 1a, Minnesota Statutes Section 3.732, and other applicable state and federal law.

    The Agricultural Society may procure insurance to cover some or all of its responsibilities of defense, indemnification, and liability under this Agreement.  Neither the County nor its employees, officials, representatives, or agents shall be responsible for any costs in connection with the defense and indemnification of any claim or lawsuit related to this Agreement.

5

EXHIBIT 1 to Complaint

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

The Agricultural Society is responsible for any claims or costs in excess of available insurance coverage. If the Agricultural Society is unable to bear the full costs of such claims, including defense and indemnification, it will seek financial assistance from the Minnesota State Legislature.

Nothing herein shall be construed as a waiver by either Party of any other tort liability protections provided by law.

Notwithstanding the statutory tort liability limits set forth in the Tort Claims Act, the Agricultural Society's obligation to defend and indemnify the County and its employees, officials, representatives, and agents for any claim or lawsuit against the County arising from the County's performance of its duties under this Agreement is unlimited.

In the event that the County or its employees, officials, representatives, or agents are sued for any act or omission in connection with services provided pursuant to this Agreement, the County will tender the defense of such lawsuit and the Agricultural Society will accept the tender of defense. The County reserves the right to defend itself against any lawsuit or claim, and the Agricultural Society agrees to pay all reasonable costs associated with the County's defense of itself.

For purposes of determining total liability for damages, the Parties agree that they are considered a single governmental unit under Minnesota Statutes Section 471.59, subdivision 1a(b).

5. **Workers' Compensation:** Each Party will maintain workers' compensation insurance or a program of self-insurance covering its own personnel.

6. **Other Benefits:** Nothing in this Agreement is intended to prevent or hinder the pursuit of applicable state or federal benefits to personnel who respond in the course of, and arising out of, their employment under this Agreement.

7. **Assignment:** Each Party binds itself and its successors, legal representatives, and assigns with respect to all covenants of this Agreement, and neither the County nor the Agricultural Society will assign or transfer their interest in this Agreement without the written consent of the other.

8. **Amendments:** Any changes or additions to this Agreement must be in writing and signed by authorized representatives of each Party.

9. **Waiver:** Failure of a Party to assert any right under this Agreement shall not constitute a waiver or termination of that right.

10. **Survival of Obligations:** If a court or governmental agency with proper jurisdiction determines that a provision herein is unlawful, that provision shall terminate. If a provision is so terminated but the Parties can continue this

EXHIBIT 1 to Complaint

62-CV-21-4223

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

Agreement without the terminated provision, the remainder of this Agreement shall continue in effect.

11.   **Interpretation of Agreement, Venue:**  This Agreement shall be interpreted according to the laws of the State of Minnesota.  Litigation related to this Agreement shall be venued in the appropriate state or federal court in Ramsey County.

12.   **Force Majeure:**  Neither Party shall be held responsible for performance if its performance under this Agreement is prevented by acts or events beyond the Party's reasonable control including, but not limited to, acts of God, severe weather and storms, pandemics, earthquake or other natural occurrences, strikes and other labor unrest, power failures, electrical power surges or current fluctuations, nuclear or other civil military emergencies, civil unrest, or acts of legislative, judicial, executive, or administrative authorities.

13.   **Distribution of Property:**  Any equipment or property acquired by either Party to fulfill the purposes of this Agreement shall remain the property of the purchasing party at the conclusion of this Agreement.

14.   **Equal Opportunity:**  Each Party agrees to comply with all federal, state, and local laws, resolutions, ordinances, rules, regulations, and executive orders pertaining to unlawful discrimination or denial of programs, services, and activities on account of race, color, creed, religion, sexual orientation, national origin, gender, marital status, status with regard to public assistance, disability, or age.

15.   **State Fair:**  This agreement shall not be construed as a relinquishment by the Agricultural Society of any of the powers vested in it by Minnesota Statutes Chapter 37.

16.   **Notice:**  All notices under this Agreement will be deemed to have been fully given when made in writing and sent to the Ramsey County Sheriff (on behalf of the County) or the General Manager of the Agricultural Society (on behalf of the Agricultural Society).

17.   **Entire Agreement:**  This Agreement supersedes all oral agreements and negotiations between the Parties relating to the subject matters herein.

EXHIBIT 1 to Complaint

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

COUNTY OF RAMSEY

By:_____
   Toni Carter, Chair
   Board of Ramsey County Commissioners
   Date: _____


By:_____
   Mee Cheng, Chief Clerk
   Board of Ramsey County Commissioners
   Date: _____


By:_____
   Bob Fletcher
   Sheriff of Ramsey County
   Date: _____


APPROVED AS TO FORM:


By:_____
   John A. Ristad
   Assistant Ramsey County Attorney

MINNESOTA STATE AGRICULTURAL
SOCIETY

By:_____
   Jerry Hammer
   General Manager
   Date: _____


By:_____
   Brian Hudalla
   Deputy General Manager
   Date: _____

8

EXHIBIT 1 to Complaint

62-CV-21-4223

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM



2200 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Tel: 612.977.8400 | Fax: 612.977.8650
taftlaw.com

Affirmative Action, Equal Opportunity Employer

**Scott M. Flaherty**
612.977.8745
SFlaherty@Taftlaw.com

June 28, 2021

***Sent by Email (Jerry.Hammer@mnstatefair.org)***
***and U.S. Mail (Certified)***

Jerry Hammer
Secretary
State Agricultural Society
1265 Snelling Avenue North
St. Paul, MN 55108-3003

Re:  **Minnesota Gun Owners Caucus**

Dear Mr. Hammer:

Taft Stettinius & Hollister LLP is counsel to the Minnesota Gun Owners Caucus, a grassroots organization dedicated to protecting and advancing the right of citizens to keep and bear arms. I write regarding the State Agricultural Society's prohibition on lawful, permitted pistol carry by Minnesotans at the 2021 Minnesota State Fair, scheduled for August 26 to September 6, 2021.

As a "public corporation,"[1] the State Agricultural Society may not lawfully violate the constitutional and statutory rights of citizens. The Second Amendment protects an individual right to possess firearms.[2] That individual right has been incorporated against the state.[3]

---

[1] Minn. Stat. § 37.01.
[2] *District of Columbia v. Heller*, 554 U.S. 570 (2008).
[3] *McDonald v. City of Chicago*, 561 U.S. 742 (2010); *State v. Craig*, 826 N.W.2d 789 (Minn. 2013). Because the First Amendment has already been held to bind the society, *Heffron v. International Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640 (1981), there can be no doubt that the Second Amendment also binds it.

Taft Stettinius & Hollister LLP
Chicago / Cincinnati / Cleveland / Columbus / Dayton / Delaware / Denver / Indianapolis / Minneapolis / Northern Kentucky / Phoenix / Washington, DC

EXHIBIT 2 to Complaint

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

Jerry Hammer
June 28, 2021
Page 2

I understand that the State Agricultural Society purports to prohibit from the 2021 State Fair all weapons[4] including pistols, which are protected by the Second Amendment and by state law. Specifically, Minnesota law preempts any local regulation of firearms and ammunition that is inconsistent with state law "to the complete exclusion of any order, ordinance or regulation,"[5] subject to two exceptions not relevant here. Thus, even though the State Agricultural Society may enact ordinances,[6] those ordinances cannot validly conflict with state or federal law.

If the State Agricultural Society is represented by counsel, please forward this letter accordingly. My client wishes to promptly ensure that the State Agricultural Society will not prohibit lawful, permitted pistol carry by Minnesotans at the 2021 Minnesota State Fair. The public interest is best served by ensuring that public corporations honor state and federal law.

### *MGDPA Request*

Pursuant to the Minnesota Government Data Practices Act,[7] my client requests copies of the following five categories of data:

1. All bylaws, ordinances, or rules, as those terms are used in Minn. Stat. § 37.16, that:

   a. have ever been filed with the secretary of the society State Agricultural Society; and[8]

   b. are presently in effect, or will be in effect through and including September 6, 2021.

---

[4] *E.g.*, https://www.mnstatefair.org/faq/allowed-and-prohibited-items/ (last visited June 24, 2021).

[5] Minn. Stat. § 471.633; Minn. Stat. § 624.714, subd. 23; *see* Minn. Stat. § 624.717 (providing that the Minnesota Citizens' Personal Protection Act of 2003 supersedes any local regulation of the carrying or possessing of pistols); *see also* Minn. Stat. § 624.714, subd. 22 ("The legislature of the state of Minnesota recognizes and declares that the second amendment of the United States Constitution guarantees the fundamental, individual right to keep and bear arms. The provisions of this section are declared to be necessary to accomplish compelling state interests in regulation of those rights. The terms of this section must be construed according to the compelling state interest test.").

[6] Minn. Stat. § 37.16 (providing that the society may enact ordinances, violations of which are misdemeanors).

[7] Minn. Stat. ch. 13.

[8] My client does not seek copies of bylaws, ordinances, or rules which the society does not contend are in effect, even if filed with the secretary. This request *is* prospective, though, and does seek any later-effective bylaws, ordinances, or rules filed after today.

**EXHIBIT 2 to Complaint**

62-CV-21-4223

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

Jerry Hammer
June 28, 2021
Page 3

2. All data regarding any authorization or permission given to any person to carry firearms on the State Fairgrounds[9] during any state fair since 2016, inclusive.

3. The data inventory required by Minn. Stat. § 13.025, subd. 1.

4. The public data access policy required by Minn. Stat. § 13.025, subd. 2.

5. The data subject rights and access policy required by Minn. Stat. § 13.025, subd. 3.

If access to any of this data is denied, I request written certification along with citation to any and all statutory sections or other authority under which the denial is made, for each and all of the data to which access has been denied. To the extent any data is deemed classified as security information, I request a description explaining the necessity.

Sincerely,

Taft Stettinius & Hollister LLP

s/ *Scott M. Flaherty*

Scott M. Flaherty

SMF:cjs

---

[9] As defined in Minn. Stat. § 37.01.

**EXHIBIT 2 to Complaint**

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
$

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)        $ _____
☐ Return Receipt (electronic)      $ _____
☐ Certified Mail Restricted Delivery  $ _____
☐ Adult Signature Required         $ _____
☐ Adult Signature Restricted Delivery $ _____

Postage
$

Total Postage and Fees
$

Postmark
Here

Sent To
**Jerry Hammer**
Street and Apt. No., or PO Box
**Secretary**
City, State, ZIP+4®
**State Agricultural Society**
**1265 Snelling Avenue North**
**St. Paul, MN 55108-3003**

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

**Jerry Hammer**
**Secretary**
**State Agricultural Society**
**1265 Snelling Avenue North**
**St. Paul, MN 55108-3003**

9590 9402 6691 1060 6271 58

2. Article Number *(Transfer from service label)*

7020 1810 0001 8055 8574

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                          ☐ Agent
                           ☐ Addressee

B. Received by *(Printed Name)*    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053        Domestic Return Receipt

**EXHIBIT 2 to Complaint**

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>x ⟨signature⟩      ☐ Agent  ☐ Addressee<br>B. Received by *(Printed Name)*   C. Date of Delivery<br>V. Molo            7-1-21 |
| 1. Article Addressed to:<br><br>**Jerry Hammer**<br>**Secretary**<br>**State Agricultural Society**<br>**1265 Snelling Avenue North**<br>**St. Paul, MN 55108-3003** | D. Is delivery address different from item 1?  ☐ Yes<br>If YES, enter delivery address below:       ☐ No |
| ‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖<br>9590 9402 6691 1060 6271 58 | 3. Service Type<br>☒ Adult Signature<br>☐ Adult Signature Restricted Delivery<br>☒ Certified Mail®<br>☐ Certified Mail Restricted Delivery<br>☐ Collect on Delivery<br>☐ Collect on Delivery Restricted Delivery<br>☐ Insured Mail<br>☐ ... Restricted Delivery  | ☐ Priority Mail Express®<br>☐ Registered Mail™<br>☐ Registered Mail Restricted Delivery<br>☐ Signature Confirmation™<br>☐ Signature Confirmation Restricted Delivery |
| 2. Article Number *(Transfer from service label)*<br>7020 1810 0001 8055 8574 | |

PS Form **3811**, July 2020 PSN 7530-02-000-9053                    Domestic Return Receipt

**EXHIBIT 2 to Complaint**

62-CV-21-4223

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM



July 9, 2021

**VIA EMAIL AND U.S. MAIL**

Scott M. Flaherty
Taft Stettinius & Hollister LLP
2200 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
*SFlaherty@Taftlaw.com*

Re:      Minnesota Gun Owners Caucus

Dear Scott:

   We represent the State Agricultural Society.  We write in response to your letter dated June 28, 2021.  In your letter, you state that your client—the Minnesota Gun Owners Caucus—"wishes to promptly ensure" that the State Agricultural Society will allow private citizens to carry guns on the fairgrounds at the 2021 State Fair.  The State Agricultural Society has the obligation and the authority to impose rules and policies that prioritize the health and safety of fairgoers.  To that end, the State Agricultural Society has consistently maintained the policy that private citizens may not bring weapons onto the fairgrounds during the fair.

   The Minnesota State Fair is one of the largest in the nation.  On an average day during the annual fair, more than 180,000 persons crowd the fairgrounds.  The State Agricultural Society leases/licenses space and structures to more than 1,000 exhibitors and concessionaires each day of the fair.  To ensure the safety of the fair, the policy prohibiting weapons on the fairgrounds during the fair must be maintained.

   In your letter, you request certain information from the State Agricultural Society.  With respect to your first request, the State Agricultural Society's rules are available on the Minnesota State Fair's website at: https://www.mnstatefair.org/faq/.  The Agricultural Society does not have documents responsive to request No. 2 and does not maintain the inventory or policies requested in Nos. 3, 4, or 5.

Attorneys & Advisors      Fredrikson & Byron, P.A.      USA / China / Mexico
Main 612.492.7000      200 South Sixth Street, Suite 4000      Minnesota, Iowa, North Dakota
Fax 612.492.7077      Minneapolis, Minnesota 55402-1425      fredlaw.com

**EXHIBIT 3 to Complaint**

62-CV-21-4223

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

Scott M. Flaherty
June 9, 2021
Page 2

Very truly yours,

*s/ Leah C. Janus*

Leah C. Janus
**Direct Dial:** 612.492.7349
**Email:** ljanus@fredlaw.com

73366109 v1

**EXHIBIT 3 to Complaint**

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

# Minnesota State Agricultural Society Rules Chapter 37
# Minnesota Statutes     JANUARY 2021

## CHAPTER 1 GENERAL

1.01 Authority
1.02 Definitions
1.03 All pay gates
1.04 Gate controls
1.05 Pass-out gates
1.06 Admission prices
1.07 Vehicle restrictions
1.08 Pedestrian right-of-way
1.09 Two-wheeled and track-vehicles
1.10 Bannering, picketing, interfering, protesting
1.11 Handing out materials
1.12 Advertising vehicles
1.13 Conflict of interest
1.14 Use of vehicles by Society employees
1.15 Equal employment opportunities
1.16 Acceptance of gift
1.17 Hiring of relatives
1.18 Dogs
1.19 Roller skates, in-line skates and skateboards
1.20 Practice driving 6
1.21 Use of metal detectors 6
1.22 Electrical inspections and requirements 6
1.23 Service animals 7

## CHAPTER 2 COMMERCIAL SPACE

2.00 Commercial space policy
2.01 License rates
2.02 License transfer
2.03 Duration and extension of licenses
2.04 License extension procedures
2.05 New licenses
2.06 Construction and maintenance of improvements
2.07 Ownership of improvements
2.08 Off-season use of structures
2.09 Operation of multiple commercial space
2.10 Transfers of personal property interests
2.11 Use of space
2.12 Risk of loss
2.13 Prize drawings
2.14 Wholesale permits
2.15 Regulation of conduct and activities

EXHIBIT 4 to Complaint

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

2.16 Sales tax permit
2.17 Commercial space decisions
2.18 Review of commercial space actions

## CHAPTER 3 COMPETITIVE EXHIBITS

3.01 Competitive exhibition times
3.02 Responsibility for competitive exhibits
3.03 Board of Animal Health
3.04 General competitive entry requirements
3.05 Animal competitive entry requirements
3.06 Judges
3.07 Interference with judging
3.08 Award books
3.09 Qualification of entries
3.10 Finality of decisions
3.11 Interpretation of rules
3.12 Protests
3.13 Late showing of exhibit
3.14 Premium money

## CHAPTER 37 MINNESOTA STATUTES

**MINNESOTA STATE AGRICULTURAL SOCIETY**
**Rules governing the management and control of the Minnesota State Fairgrounds and the Minnesota State Fair.**

## CHAPTER ONE - GENERAL

**1.01 AUTHORITY.**

These rules are promulgated pursuant to authority granted the Minnesota State Agricultural Society by Minn. Stat. § 37.16. The Minnesota State Agricultural Society is not an agency of statewide jurisdiction, therefore, rules adopted by the Minnesota State Agricultural Society have not been promulgated pursuant to Minn. Stat. Ch. 14 and will not be found in the bound volume of Minnesota rules.

**1.02 DEFINITIONS.**

For purposes of these rules, the following definitions shall apply:
(a) **Board of managers.** The board of managers is responsible for management and control of the Minnesota State Agricultural Society including the annual election of its secretary.
(b) **Commercial space.** Those areas and locations on the State Fairgrounds designated by the Society to be used for commercial exhibits and concessions.
(c) **Commercial space committee.** The committee of three or more members of the board of managers, designated by the president of the Society, empowered to examine Society commercial space policies and the actions of the commercial space division and make recommendations thereon to the board of managers.
(d) **Competitive exhibitor.** Any person or firm which enters animals or articles for competitive exhibition at the State Fair.
(e) **Delegate.** That employee of the Society given authority by the secretary to act on the secretary's behalf in the instance specified.
(f) **Department superintendent.** That delegate of the secretary who is head of a specific Society department.
(g) **Director.** That delegate of the secretary who is head of a specific Society division.

EXHIBIT 4 to Complaint

62-CV-21-4223

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

(h) **License.** An agreement whereby the Society grants to an entity the privilege to exhibit, disseminate information, sell, make deliveries of or accept deposits for future deliveries of goods, services, or information on or from an assigned State Fairgrounds commercial space during the period of the State Fair. Licenses will be granted in accordance with the Society's commercial space policy and rules, upon timely and proper application and showing of qualification, and if commercial space is available.

(i) **Minnesota State Agricultural Society (Society)**. The public corporation and department of state charged with the responsibility for management and control of the State Fairgrounds and conducting the State Fair and other exhibitions on the State Fairgrounds.

(j) **Personal property.** All privately owned buildings, tents, booths, structures, improvements, business equipment, fixtures or other enclosures, whether portable or permanently affixed to State Fairgrounds property are personal property. A private party is precluded from holding any interest in real property on the State Fairgrounds.

(k) **Secretary.** The secretary of the Minnesota State Agricultural Society is also the executive vice president.

(l) **State Fair.** An annual exhibition conducted by the Society on the State Fairgrounds.

(m) **State Fairgrounds.** That certain area of land in Ramsey County, Minnesota defined and described in Minn. Stat. § 37.01 and other real estate parcels as recorded with Ramsey County Register of Deeds, including the area outside as well as inside the fenced portion thereof.

## 1.03 ALL PAY GATES.
Entry into the State Fair shall be solely contingent upon the presentation and surrender of a valid ticket of admission in accordance with the most current schedule of gate prices as established by the board of managers.

Only properly identified emergency personnel, such as police, fire and ambulance, as well as properly identified Society service personnel, shall be exempted from this rule when engaged in legitimate emergency or service duty which requires passage through State Fairgrounds admission gates.

## 1.04 GATE CONTROLS.
Admission gates and exhibit buildings of the State Fair will be open to visitors on days and during operating hours as set by the board of managers. Persons not involved in the preparation or teardown of exhibits for the State Fair may be prohibited from entering the State Fairgrounds during the preparation and teardown period. Gate admission fees will be charged during nighttime (non-operating) hours with the same fee schedule in effect as during day time (operating) hours.

Persons entering the State Fairgrounds during non-operating hours, in addition to paying established gate fees, will be required to provide proof of their having business on the State Fairgrounds during said non-operating periods. License holders and their employees needing to enter or remain on the State Fairgrounds during the overnight period must first obtain an overnight badge from the appropriate Society department superintendent or division director. No badge will be issued without proper identification.

## 1.05 PASS-OUT GATES.
A pass-out system is operated during the State Fair at admission gates. Persons exiting through these gates may, upon request, obtain proper credentials for re-admittance to the State Fairgrounds without additional charge. Re-admittance will be honored the day of issuance only.

## 1.06 ADMISSION PRICES.
The board of managers shall annually review and establish gate admission prices for persons and vehicles including specific fee exemptions and discounts.

## 1.07 VEHICLE RESTRICTIONS.

EXHIBIT 4 to Complaint

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

Maximum vehicle speed limits on the State Fairgrounds, as well as appropriate allowances and restrictions dealing with unnecessary acceleration, vehicle parking, delivery hours, restricted areas, tow-away zones and impound arrangements, shall be established by the secretary or delegate. The secretary or delegate shall provide for the placement of such traffic control signals, signs, and other traffic control devices on the State Fairgrounds as deemed necessary for the safety, protection and control of the State Fairgrounds and the people thereon.

When any police officer or security person finds a vehicle illegally parked on the State Fairgrounds, they are authorized to issue a citation, or provide for the removal and impoundment of such vehicle, or both. Cost of removal and storage shall be borne by the vehicle's owner.

## 1.08 PEDESTRIAN RIGHT-OF-WAY.

When walking on or about any street, sidewalk or other area generally open to the public on the State Fairgrounds, pedestrians shall at all times have the right-of-way as against all vehicles, other than identified emergency vehicles. Drivers of all vehicles, other than identified emergency vehicles, shall yield the right-of-way to any and all pedestrians on the State Fairgrounds.

## 1.09 TWO-WHEELED AND TRACK-VEHICLES.

Two-wheeled vehicles, such as bicycles, motorcycles and motor scooters, will not be allowed on the State Fairgrounds during the State Fair unless such two-wheeled vehicles are on display in a commercial space licensed by the Society and, in such case, said two-wheeled vehicles must be kept in the assigned commercial space and may not, under any circumstances, be operated on the streets of the State Fairgrounds. Electric personal assistive mobility devices may be used on the State Fairgrounds by persons that are physically challenged. Track-type vehicles, including snowmobiles, may not be operated anywhere on the State Fairgrounds at any time of the year without the express authorization and approval of the secretary or delegate.

## 1.10 BANNERING, PICKETING, INTERFERING, PROTESTING.

No person or group of persons shall banner, picket, march, protest, demonstrate or caucus on the State Fairgrounds before or during the State Fair in any manner that interferes with the convenience and safety of any State Fair patron, exhibitor or employee. No person or group of persons shall banner, picket, march, protest, demonstrate or caucus on the State Fairgrounds during any event held on the State Fairgrounds while the annual State Fair is not in session (the off season) without first applying for and obtaining a permit from the Secretary of the Minnesota State Agricultural Society. Applications must be submitted to the Secretary no later than 30 days prior to the first day of the event. Application forms and the procedures and policies governing permitting decisions are available from the Secretary upon request. This Rule does not replace or modify any other rule.

## 1.11 HANDING OUT MATERIALS.

The sale, posting or distribution of any merchandise, products, promotional items and printed or written material except from a fixed location on the State Fairgrounds approved by the secretary or delegate shall be prohibited.

## 1.12 ADVERTISING VEHICLES.

The operation or parking of any sound truck or vehicle upon which advertising signs, political or otherwise, have been affixed in any manner shall be prohibited anywhere on the State Fairgrounds. This rule is not applicable to a lettered service vehicle advertising a firm or its products while making deliveries or to the normal advertising on bumpers and windows of motor vehicles.

## 1.13 CONFLICT OF INTEREST.

No manager, officer or employee of the Society shall:

**(a)** Enter into a contract with the Society.

EXHIBIT 4 to Complaint

62-CV-21-4223

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

(b) Have or acquire any financial interest, whether direct or indirect, in any contract between the Society and any license holder, performer, vendor or contractor.

(c) Engage or participate in personal business or financial transactions that conflict with the interest of the Society or their obligations and interests as a member of the board of managers, officer or employee of the Society.

(d) Be entitled to any special consideration involving the storage of vehicles and materials on the State Fairgrounds or the use of Society buildings, machinery, or equipment, except as may be specifically approved by the board of managers.

(e) Be allowed to purchase any material for their personal use through the name, credit or account of the Society.

## 1.14 USE OF VEHICLES BY SOCIETY EMPLOYEES.

All vehicles used by managers, officers or employees of the Society in connection with Society business shall:

(a) Be the property of the manager, officer or employee, with the Society to have no interest or obligation except as authorized by the board of managers and stated in the Society bulletin covering expense reimbursement; or

(b) Be used by the Society as part of a service contract, through rental or on a courtesy basis; or

(c) Be the sole property of the Society to be used only on Society business.

(d) No vehicle shall be rented by the Society from any Society manager, officer or employee.

## 1.15 EQUAL EMPLOYMENT OPPORTUNITIES.

The following policies concerning fair and equal employment shall be followed by the Society:

(a) It shall be the policy of the Society to foster the employment of all individuals with the Society in accordance with their fullest capacity and ability, regardless of race, color, creed, religion, sex, sexual orientation, age, national origin, marital or veteran status or status with regard to public assistance or disability, and to safeguard their right to hold employment with the Society without discrimination; and

(b) Every contract for or on behalf of the Society for materials, supplies, construction or licenses may be cancelled or terminated by the Society when discrimination on account of race, color, creed, religion, sex, sexual orientation, age, national origin, marital or veteran status or status with regard to public assistance or disability, exists in the hiring or employment of common or skilled labor by the contractor pursuant to the contract for or on behalf of the Society.

## 1.16 ACCEPTANCE OF GIFT.

No manager, officer or employee of the Society shall accept from a person or company that does business with the Society, any gift, gratuity, cash, merchandise or thing of value. This prohibition shall extend to the acceptance of food or beverage or merchandise at less than full retail price from a license holder during the State Fair.

## 1.17 HIRING OF RELATIVES.

No relative of a Society employee or a relative of a member of the board of managers shall be given preferential treatment in being hired or promoted. Relatives may be precluded from working in the same Society department.

## 1.18 DOGS.

During the period of the annual State Fair, no dogs or other pets shall be allowed on the State Fairgrounds. Exception: Dogs or other pets may be allowed when part of an exhibition or demonstration authorized by the secretary or delegate. No other exceptions will be allowed during the period of the State Fair.

EXHIBIT 4 to Complaint

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

During the non-fair period, no dogs or other pets shall be allowed in State Fair buildings, unless part of an exhibition or demonstration authorized by the secretary or delegate. No dogs or other pets may be allowed on the State Fairgrounds at any time unless confined or restrained on a leash of less than six feet in length.

During fair and non-fair periods, society personnel are empowered to order the removal from the State Fair any dog or pet in violation of the above, or found to be disturbing or endangering the public.

**1.19 ROLLER SKATES, IN-LINE SKATES AND SKATEBOARDS.**

Use of roller skates or in-line skates shall not be permitted on the State Fairgrounds during the State Fair except as authorized in an agreement executed by the secretary or delegate. Use of skateboards shall not be permitted on the State Fairgrounds at any time except as authorized in an agreement executed by the secretary or delegate.

**1.20 PRACTICE DRIVING.**

The State Fairgrounds may not be used by any person, organization or firm to conduct lessons for or to practice driving automobiles or other motor vehicles, unless such activity is covered under an agreement executed by the secretary or delegate.

**1.21 USE OF METAL DETECTORS.**

The use of metal detectors or similar devices shall be prohibited on the State Fairgrounds. Any activity of discovery, whether undertaken with or without a detection device, which results in digging, probing or otherwise disturbing the ground, shall be prohibited on the State Fairgrounds. This rule shall neither limit nor prohibit activities or the use of detection devices as may be directed by the secretary or delegate in the legitimate conduct of Society work.

**1.22 ELECTRICAL INSPECTIONS AND REQUIREMENTS.**

Minn. Stat. 326.244, Sub. 4 authorizes the Society to provide for inspection of fixed and transient electrical installations within its jurisdiction and to that end the Society has elected to adopt by reference as if fully set forth herein the following sections of Minn. Stat., Chapter 326 dealing with electrical regulations and inspections: A. 326.01 Definitions; B. 326.242 Licenses; C. 326.2421 Alarm and Communication Systems; D. 326.243 Safety Standards; E. 326.244 Inspection, except with respect to fees; F. 326.245 Manufacture of Electrical Apparatus; exempt; and G. 326.246 Crimes.

With respect to Minn. Stat. Sections 326.44 and 326.246, adopted above by reference. wherever the words "the Board", referring to the State Board of Electricity, are used therein, the words "the Society", should be substituted therefore.

The Society will undertake inspections within its jurisdiction in compliance with applicable requirements of the Minnesota Board of Electricity Rules, Chapter 3800, which are hereby adopted by reference, along with any future revisions, modifications or amendments thereto, except with respect to fees, which shall be established by the Society. With respect to said rules, wherever the words "the Board", referring to the State Board of Electricity, are used therein, the words "the Society" should be substituted therefore. Electrical inspections shall be accomplished by an electrical inspector(s) contracted by the Society to provide such service with qualifications and credentials as are required for the performance of such duties and who further meet the standards specified in Minnesota Board of Electricity Rules, Chapter 3800.3630.

Each individual, partnership, corporation or other business association doing electrical work within Society jurisdiction shall file with the Society a copy of their current license issued by the Minnesota Board of Electricity or such other evidence of such license as may be provided by said board. No electrical construction, remodeling, replacement or repair shall be undertaken within the jurisdictions of the Society, except minor repair work as defined in Minnesota Board of Electricity Rules, Chapter 3800.1100, without first having received an inspection from the Society.

EXHIBIT 4 to Complaint

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

**1.23 SERVICE ANIMALS.**

A service animal is a dog that is individually trained to do work or perform tasks for a person with a disability.

Service animals can accompany people with disabilities in all areas where members of the public are allowed to go. Service animals are defined as dogs that are individually trained to do work or perform tasks for people with disabilities. Service animals are working animals, not pets. The work or task a dog has been trained to provide must be directly related to the person's disability. Dogs whose sole function is to provide comfort or emotional support do not qualify as service animals under the ADA. Service animals must be harnessed, leashed, or tethered, unless these devices interfere with the service animal's work or the individual's disability prevents using these devices. In that case, the individual must maintain control of the animal through voice, signal, or other effective controls.

Inquiries, Exclusions, Charges, and Other Specific Rules Related to Service Animals:

(a) When it is not obvious what service an animal provides, only limited inquiries are allowed. Staff may ask two questions: (1) Is the dog a service animal required because of a disability, and (2) What work or task has the dog been trained to perform.

(b) Staff cannot ask about the person's disability, require medical documentation, require a special identification card or training documentation for the dog, or ask that the dog demonstrate its ability to perform the work or task.

(c) A person with a disability cannot be asked to remove his service animal from the premises unless:

(1) The dog is out of control and the handler does not take effective action to control it or;

(2) The dog is not housebroken.

When there is a legitimate reason to ask that a service animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence.

(d) In addition to service dogs, miniature horses that have been individually trained to do work or perform tasks for people with disabilities may be allowed. (Miniature horses generally range in height from 24 inches to 34 inches measured to the shoulders and generally weigh between 70 and 100 pounds.) Assessment factors are:

(1) Whether the miniature horse is housebroken;

(2) Under the owner's control;

(3) The facility can accommodate the miniature horse's type, size, and weight; and

(4) The miniature horse's presence will not compromise legitimate safety requirements necessary for the safe operation of the fair.

# CHAPTER TWO - COMMERCIAL SPACE

**2.00 COMMERCIAL SPACE POLICY.**

Minn. Stat. § 37.17 authorizes the Society to license and regulate shows, rides, exhibits and concessions on the State Fairgrounds. Commercial exhibits are placed at the State Fair to educate, inform, evoke public interest and create business opportunity. Concessions are placed to provide hospitality, shopping opportunity and entertainment, and to serve the needs and wishes of a large, diverse audience. It is the policy and goal of the Society to seek out and grant licenses for the presentation of best-quality commercial exhibits and concessions.

It is further the policy and goal of the Society that available commercial space be occupied by as wide a variety of business enterprises as possible and practical. Placement and management of commercial exhibits and concessions at the State Fair are the proprietary rights of the Society to be exercised exclusively by the Society on behalf of its audience. This exercise may be accomplished by the Society operating its own commercial exhibits and concessions or, as an alternative, issuing licenses which allow qualified independent parties to so operate.

A combination of both procedures may prove best when implemented with discretion and judgment. All commercial space decisions pertaining to the State Fair are made consistent with statutory requirements, these rules and the Society's obligation to its patrons.

EXHIBIT 4 to Complaint

62-CV-21-4223

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

**2.01 LICENSE RATES.**
    Rates charged for licenses at the State Fair shall be set by the board of managers and implemented by the secretary or delegate.

**2.02 LICENSE TRANSFER.**
    Agreements covering licenses may not be sold, transferred, assigned or devised by will.

**2.03 DURATION AND EXTENSION OF LICENSES.**
    Licenses are valid for a designated period as agreed in writing. The fact that an operator has entered into an agreement for a designated period does not create a right nor should it create an expectation that the agreement will be extended for any subsequent term. The Society, through its board of managers, secretary and delegate reserves the right at its sole discretion to not grant a new license for a subsequent term. Notwithstanding the forgoing, the Society shall annually review all license agreements in consideration of offering a license for another term to operators from the previous term. The review shall be based on new or changing public needs, physical changes and upon performance of the operator as measured by established standards. The Society expressly reserves the right to not grant a new license at any time when it has determined that it is in the best interest of its patrons not to do so. The granting of a new license for a subsequent term shall be on the basis of the same space, purpose, products, and ownership as in the prior term unless otherwise expressly provided by the secretary or delegate. Grounds, space alterations or other operational changes as determined exclusively by the Society may make it necessary to alter or eliminate certain previously available commercial space from one year to the next. In such an instance, the Society may either offer an alternative location or elect to not grant a new license.

**2.04 LICENSE EXTENSION PROCEDURES.**
    The secretary or delegate will send notices via first class mail to operators who held licenses during the immediately preceding term who are to be given an opportunity to obtain a new license. An acknowledgment and acceptance of the location assigned and other terms must be returned within 30 days of original mailing. Any requests for approval of change in location, purpose or products must be noted on the acceptance.

**2.05 NEW LICENSES.**
    In furtherance of its stated policy to seek out best-quality commercial exhibits and concessions, the Society may solicit and receive written proposals from independent parties having an interest in obtaining licenses at the State Fair. Proposals may be submitted at any time; they must be detailed in accordance with specifications provided by the Society. The secretary and delegate shall exercise their best judgment in determining if changes in the present commercial space allocation are called for and, if so, which new commercial exhibits or concessions would best serve the interests of the Society and its patrons. Among the factors to be considered in this process are:
    **(a)** Availability of appropriate commercial space;
    **(b)** The health and safety of State Fair patrons;
    **(c)** The extent to which the proposed product or service duplicates those of other commercial exhibits or concessions;
    **(d)** The appropriate mixture and balance of products and services available throughout the State Fairgrounds;
    **(e)** The originality and quality of the proposed products or service;
    **(f)** Experience and financial stability;
    **(g)** The quality of presentation and professionalism demonstrated;
    **(h)** Such other factors as the Society deems appropriate in determining its best interests and those of its patrons.

**2.06 CONSTRUCTION AND MAINTENANCE OF IMPROVEMENTS.**

EXHIBIT 4 to Complaint

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

The placement, construction or alteration of any privately owned building, booth, tent or enclosure on the State Fairgrounds must be approved in advance in writing by the secretary or delegate. A person or entity intending to construct or alter such a facility shall submit a formal, written request along with plans and specifications to the secretary or delegate showing that the proposed construction will be in compliance with applicable building codes and will be of an acceptable design and appearance. All tents must be flame-proofed and accompanied by a letter of certification showing annual flame-proofing treatment by an approved vendor. The Society shall, from time to time, engage qualified engineering personnel and building and fire code officials to inspect and evaluate the structural condition and safety of buildings on the State Fairgrounds. The Society may order changes or modifications in the improvements of operators as it deems necessary. Changes or modifications so ordered must be accomplished within a reasonable time or structure may be ordered closed, removed or torn down at the expense of the operator.

**2.07 OWNERSHIP OF IMPROVEMENTS.**

Improvements, whether affixed to State Fairgrounds property or portable, are classified as personal property as defined in chapter one of these rules. The use of any improvement on the State Fairgrounds is subject to the discretion of the Society and shall only be permitted pursuant to the terms of a valid license and these rules. Portable personal property must be removed by its owner from the State Fairgrounds within 15 days following the State Fair or it will be removed or torn down at the owner's expense as directed by the secretary or delegate. In the event that the secretary and delegate determine that a new license involving an structure affixed to State Fair property will not be issued and that the affixed structure must be removed from the State Fairgrounds, the secretary or delegate shall give written notice to the owner and provide a specific time for its removal and restoration of the underlying real property. Failure to remove and restore within the time specified shall result in the forfeiture of all rights in the affixed structure and the secretary or delegate, on behalf of the Society, may take possession of and remove the same, charging any expense for removal and restoration to the owner.

**2.08 OFF-SEASON USE OF STRUCTURES.**

Privately owned structures on the State Fairgrounds may not be used by owners during the non-State Fair period except for storage of commercial exhibit or concession material used pursuant to a license. Any other use must be covered by a separate agreement issued by the Society. Society owned structures may not be used by any person or entity for storage or any other purpose during the non-State Fair period without a separate agreement covering this use issued by the Society.

**2.09 OPERATION OF MULTIPLE COMMERCIAL SPACES.**

The Society normally does not permit a person or entity to operate from more than one area or location. Those operators who have previously been licensed will not be allowed additional licenses for other locations unless there are compelling factors which indicate that it would be in the best interest of the Society and its patrons to do so.

**2.10 TRANSFERS OF PERSONAL PROPERTY INTERESTS.**

Absent compelling circumstances, the board of managers will not allow the transfer by contract, gift, assignment, bequest, devise, sublease, or otherwise of privately-owned structures affixed to State Fairgrounds property or situated in Society owned buildings. When, in the judgment of the board of managers, it is in the best interest of the Society and its patrons to allow the structure of an owner situated on the State Fairgrounds to be transferred, the secretary or delegate may grant written authorization for transfer of said structure. As an alternative to a third party transfer, the Society may exercise authority to purchase the structure being offered for transfer, in which case the structure must either be transferred to the Society or removed from the Fairgrounds. A request to transfer interest in a structure located on the State Fairgrounds shall be made in writing by the owner to the secretary or delegate. The secretary or delegate shall respond in writing to the request for transfer within 30 days after its receipt. If a request for

**EXHIBIT 4 to Complaint**

62-CV-21-4223

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

transfer is approved, notice of said transfer will be posted for 30 days at the State Fairgrounds administrative offices to advise the public.

The Society may, in its sole discretion, subsequently enter into a license agreement with the transferee. In connection therewith, the society will require the following:

(a) The transferee has applied for a license according to procedures defined under rule S.F. 2.05 and the proposal has been reviewed and accepted by the secretary or delegate. Transferee acknowledges in writing acceptance of the fact that said transfer carries with it no guarantee of the issuance of a license.

(b) A full, written financial disclosure has been made concerning the structure transfer. The financial disclosure shall warrant that the purchase price paid was limited to the value of the structure, fitments and equipment acquired in the transfer. The disclosure shall also include an accredited appraisal by a Society approved appraiser of the structure, fitments and equipment being transferred. Valuation shall be based entirely on the cost approach.

(c) The transaction does not violate the Society's policy concerning multiple licenses or other Society commercial space rules.

(d) The transferee shows adequate experience and financial stability to successfully hold a license.

(e) The proposed transaction is reasonable, in the best interest of the Society, and is consistent with the health, safety and enjoyment of its patrons.

No transfer of a structure situated on the State Fairgrounds will be approved if the proposed purchase price is greater than the appraised value of the structure and personal property involved in the transfer. Completion and execution of a Society commercial space transfer policy acknowledgment, verifying understanding and acceptance of Society transfer rules and procedures, and delivery of a copy of same to the secretary or delegate, along with a properly executed purchase agreement between the parties, shall constitute finalization of approved structure interest transfer.

## 2.11 USE OF SPACE.

License holders must confine their business and the promotion and advertising of same on the State Fairgrounds to the commercial space specified in the license during operating periods specified in the license. Failure to comply with this rule will subject license holders to forfeiture of license without reimbursement.

## 2.12 RISK OF LOSS.

The Society assumes no liability for loss or damage to personal property of a license holder due to fire, tornado, weather conditions, theft, vandalism or other causes. License holders bringing property or goods onto the State Fairgrounds should protect such property or goods with appropriate insurance.

## 2.13 PRIZE DRAINGS.

No drawing for a prize or prizes may be conducted by a license holder without receiving permission in advance from the secretary or delegate. Drawing must be conducted in accordance with procedures provided license holder at the time permission is granted.

## 2.14 WHOLESALE PERMITS.

Wholesale permits are issued by the Society to vendors who desire to solicit orders, deliver articles or provide services to license holders at the State Fair. Parties desiring wholesale permits for the State Fair must apply to the secretary or delegate. Delivery vehicles not properly identified with a wholesale permit shall be prohibited from entering the State Fairgrounds during the State Fair. This permit does not authorize retail sales.

## 2.15 REGULATION OF CONDUCT AND ACTIVITIES.

The society recognizes that the State Fair is a proper forum for the exchange of ideas necessary to a free society yet reserves the right to regulate all activities on the State Fairgrounds with regard to time,

**EXHIBIT 4 to Complaint**

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

manner and place in pursuance of its valid interest in maintaining peace and order and providing for the protection of its patrons. License holders must comply with all applicable state and federal laws, Society rules and requirements set forth in the commercial space manual.

### 2.16 SALES TAX PERMIT.

License holders involved in taxable retail sales shall be responsible for obtaining a Minnesota state sales tax permit. Non-compliance with Minnesota tax laws shall be grounds for cancellation of licenses.

### 2.17 COMMERCIAL SPACE DECISIONS.

A determination not to issue a new license or a determination approving or denying the proposed sale, transfer or conveyance of any structure associated with commercial space on the State Fairgrounds shall be in writing and shall be approved by the secretary.

### 2.18 REVIEW OF COMMERCIAL SPACE ACTIONS.

Any person improperly treated in the application of commercial space rules may petition the commercial space committee for review of such treatment. The review shall be initiated by any such person submitting a request for review in writing to the secretary within 20 days of the alleged improper treatment. The secretary shall set a meeting of the commercial space committee within 45 days thereafter except that requests for review received by the secretary after August 1 will be heard after that year's State Fair. Request shall identify, in writing, the specific basis for the review and shall precisely state how the party was improperly treated. Failure to specifically state the grounds for review in writing shall result in the automatic dismissal of a request for review. The review of the commercial space committee shall be limited to the grounds stated in the request for review. The commercial space committee shall formally hear the request for review in the presence of the person requesting review. If the committee determines that person was improperly treated, it shall have the authority to direct the secretary to take such remedial steps as the committee deems fair and appropriate. After final disposition of any matter reviewed pursuant to this rule, the committee shall report such disposition to the board of managers.

# CHAPTER THREE - COMPETITIVE EXHIBITS

### 3.01 COMPETITIVE EXHIBITION TIMES.

Times for the setup of State Fair competitive exhibits, the dismantling and removal of exhibits and the hours of public viewing will be set annually by the secretary or delegate and will be stated in individual department premium books.

### 3.02 RESPONSIBILITY FOR COMPETITIVE EXHIBITS.

The Society will use diligence to protect livestock and articles entered for exhibition, after their arrival and placement, but under no circumstances will it be responsible for any loss, injury or damage done to or caused by any animal or article on exhibition. It is the responsibility of the competitive exhibitor to obtain appropriate insurance for any damages due to or caused by the exhibit and to indemnify and hold the Society harmless against any claim arising out of incidents involving the exhibit. Removal or pickup of exhibits at established times as stated in individual department premium books, entry blanks or entry receipts, shall be the responsibility of the competitive exhibitor. The Society shall not be responsible for any exhibit not removed or picked up at established time and the secretary or delegate will dispose of all exhibits not removed or picked up by December 1 of the year in which the exhibit was entered.

### 3.03 BOARD OF ANIMAL HEALTH.

The exhibition of livestock on the State Fairgrounds shall be under the supervision of the Minnesota Board of Animal Health and its applicable rules and regulations will be complied with in full. Health requirements for individual departments will be set forth in their respective premium books.

EXHIBIT 4 to Complaint

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

**3.04 GENERAL COMPETITIVE ENTRY REQUIREMENTS.**

Competitive exhibitors must file proper entry blanks with any applicable fees prior to the designated closing date for entries. The Society reserves the right to refuse entries or prohibit the exhibition of animals or articles entered if the showing of such animals or articles is contrary to law, or violative of the Society's interest in providing for the health, safety and protection of its patrons. Exhibits entered in the wrong class or category may be transferred prior to judging at the discretion of the department superintendent to the proper class or category of competition.

Deception of any type by an exhibitor, as determined by the department superintendent will ban the exhibitor from any further competition and result in the forfeiture of all premiums. Mechanical or artistic articles must be entered in the name of the artist, inventor, manufacturer or maker. The Society desires that all prospective exhibits be given a fair opportunity to enter their exhibits and to have them judged on the basis of their individual merits without favoritism or undue influence. This means that, as a minimum safeguard, an objectively qualified prospective exhibitor shall not be given an advantage or placed at a disadvantage because of his or her familial relationship with a Society officer or member of the Board of Managers. On any occasion when a relative of a Society officer or member of the Board of Managers has objectively qualified for the entry of an exhibit, the related Society officer or Board of Managers' member shall not have any written or oral communication with either the affected department superintendent or exhibit judge before, during and after the judging process is completed as the communication relates to the competition in which the exhibit is entered.

**3.05 ANIMAL COMPETITIVE ENTRY REQUIREMENTS.**

When animals are entered for State Fair competition by an entity other than an individual, that entity (whether a corporation, partnership, breeding establishment or other) must have been in existence as of the closing date of entries. Appropriate documentation showing the status of the entity must be available for inspection by the department superintendent. All animals entered under a breed classification must be recorded in a breeding association recognized as representative of the particular breed. The competitive exhibitor must produce a certificate of registry at the request of the department superintendent. All animals shown must be owned by the competitive exhibitor from the time of making entry, except as otherwise provided in special rules of the department.

**3.06 JUDGES.**

Competent and qualified persons will be employed as judges by the Society to evaluate all competitive exhibits. Judges shall be responsible for reading and understanding the general rules and all special rules applicable to the department or class in which they are to serve. No person who is a competitive exhibitor may act as judge in a class in which they are competing.

**3.07 INTERFERENCE WITH JUDGING.**

Judges shall report to the department superintendent any competitive exhibitor who in any way, whether in person or by agent or employee, interferes with them or shows any disrespect to them during the judging. The department superintendent may exclude any such competitive exhibitor from further competition. The secretary may withhold from such competitive exhibitor any or all premiums that have been awarded and may also exclude such competitive exhibitor from further competition at the State Fair.

**3.08 AWARD BOOKS.**

Judges and persons acting as clerks to the judges must use special care to record the proper names in the award books after awards have been made. The judge, competitive department superintendent in charge and clerk recording the awards of the department must sign the award book at the close of each class immediately after all awards in such class have been made.

**3.09 QUALIFICATION OF ENTRIES.**

EXHIBIT 4 to Complaint

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

If there is any question as to the regularity of an entry or the right of any animal or article to compete in any class or category, the judge or judges shall report same to the competitive department superintendent in charge for adjustment. Judges shall place a reserve award in each class. Should any animal or article awarded a prize be disqualified, the animal or article awarded the next lower prize shall graduate into the next higher position, if in the opinion of the judge, it is worthy of such prize. Judges must not award a prize to an unworthy exhibit. No premium or distinction of any kind shall be given to any animal or article that is not deserving.

**3.10 FINALITY OF DECISIONS.**
In judging livestock, the decision of the official State Fair veterinarian and judge as to soundness shall be final. The decision of the judge shall be final in all cases, except when mistake, fraud, misrepresentation or collusion, not known at the time of the award, is discovered. In such cases, the secretary shall take appropriate action or refer the matter to the board of managers.

**3.11 INTERPRETATION OF RULES.**
A faithful observance of all rules governing the exhibit will be required, and when in doubt as to the application or meaning of a rule, the competitive department superintendent in charge shall interpret such a rule. This interpretation when requested by either a competitive exhibitor or judge must be reduced to writing and returned to the secretary or delegate with the award books.

**3.12 PROTESTS.**
A protest from the decision of a judge will only be accepted from a competitive exhibitor named in the official judge's sheet for competition in the class or category under protest, and must be filed with the secretary within five (5) hours after the award has been made. An award is deemed to have been made when the notation of the decision of the judge is entered into the department award book. All protests must be made in writing and must be accompanied by a deposit of one hundred dollars ($100). The protest must state plainly and specifically the facts upon which the complaint or appeal is based. The right to appeal will lie only when it is charged that the award has been made in violation of the rules governing the exhibit, or when it is charged that the decision of the judge has been influenced or interfered with by another person. No protest or appeal based upon the statement that the judge or judges are incompetent or have over-looked an animal or article will be considered. The one hundred dollar deposit will be returned only if the protest or appeal is upheld. In protest and appeal instances where rules established by a breed association or other competitive organization with which the Society has an agreement differ from this rule, rules of the association or organization shall govern.

**3.13 LATE SHOWING OF EXHIBIT.**
No animal or exhibit will be judged or awarded a prize if it is not ready for judging and promptly brought into the show ring when the class is called.

**3.14 PREMIUM MONEY.**
Cash premiums awarded will be paid by check made out to the competitive exhibitor and mailed to the post office address as stated on the entry blank. Competitive exhibitors may forfeit all premium money if exhibits are removed from the grounds prior to the official time of release. The board of managers reserves the right to make reductions in premiums if the financial conditions of the Society make such reductions necessary.

# CHAPTER 37 MINNESOTA STATUTES
**Pertaining to THE MINNESOTA STATE AGRICULTURAL SOCIETY**

EXHIBIT 4 to Complaint

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

**Chapter 37 of Minnesota Statutes outlines the purposes, organization and conduct of the Minnesota State Agricultural Society (Minnesota State Fair). Material contained herewith includes all changes and/or additions, if any, enacted at the last most recent session of the Minnesota Legislature.**

## 37.01 PUBLIC CORPORATION.

The State Agricultural Society is a public corporation. The conveyance to the state of the land in Ramsey County described as Southeast Quarter (SE 1/4) of Section Twenty-one (21) and East half (E 1/2) of East half (E 1/2) of Southwest Quarter (SW 1/4), Section Twenty-one (21), Township Twenty-nine (29), Range Twenty-three (23), is confirmed. Anything in that conveyance to the contrary notwithstanding, the state holds that land and any other property known and used as the "State Fairgrounds" forever for the following public purposes: (1) exhibiting under the management and control of the society, at annual fairs and at other times determined by the society, the agricultural, stock-breeding, horticultural, mining, mechanical, industrial, and other products and resources of the state, including proper exhibits and expositions of the arts, human skills, and sciences; and (2) other uses and purposes determined by the State Agricultural Society, including the leasing of parts of the State Fairgrounds. The society shall not lease any part of the State Fairgrounds if the lessee is going to compete with an existing established business of auto racing within a radius of 40 miles, except during the operation of the state fair and all other public exhibitions pertinent to expositions of human art, industry, or skill. Neither the state nor the society shall ever charge or encumber this property. Any part of the State Fairgrounds which is within the boundaries of a city or other political subdivision of the state is detached from the city or political subdivision. Nothing in this section exempts otherwise taxable property on the fairgrounds or the fairgrounds itself from real and personal property taxes pursuant to chapters 272 to 275 and 471.

## 37.02 BUDGET; BUILDING RESTRICTIONS; EXEMPTIONS.

The state agricultural society is subject to and has all powers, rights, and privileges granted by law, with the following exceptions:

(a) The society need not comply with the provisions of Laws 1939, chapter 431, relating to budgets, allotments, and encumbering of funds.

(b) The society is not subject to the supervision of the commissioner of administration in the erection and construction of any new building.

(c) The books and accounts of the society are subject to examination by the legislative auditor.

## 37.03 MEMBERSHIP.

**Subdivision 1. Members.** Members of the state agricultural society must be citizens of this state. The membership is as follows:

(a) Three delegates chosen annually by each agricultural society or association in the state which maintains an active existence, holds annual fairs, and is entitled to share in the state appropriation under the provisions of section 38.02. If one of those societies or associations fails to choose delegates, then its president, secretary, and treasurer, by virtue of their offices, are its delegates. If two fairs receiving state aid are operating in one county, each delegate from each society or association is entitled to one-half vote at regular or special meetings of the state society.

(b) One delegate appointed by the county board of each county in which no county or district agricultural society exists.

(c) Individuals elected by the society as honorary members for having performed eminent services in agriculture, horticulture, or related arts and sciences or long and faithful service in or benefits to the society. Honorary members must be elected by two-thirds vote at any annual meeting. The number of honorary members may not exceed the society's membership and only one honorary member may be elected annually. Each honorary member is entitled to one vote.

(d) Two elected delegates and the president may represent each of the following societies and associations: the Minnesota State Horticultural Society, the Minnesota Dairy Goat Association,

EXHIBIT 4 to Complaint

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

the Minnesota Honey Producers Association, Inc., the Minnesota Livestock Breeders' Association, the Minnesota Crop Improvement Association, the Minnesota Pork Producers Association, the Minnesota Lamb and Wool Producers Association, the Minnesota Horse Breeders' Association, the Minnesota Veterinary Medical Association, the Minnesota Beef Cattle Improvement Association, the Central Livestock Association, the Minnesota State Poultry Association, the Minnesota Boer Goat Association, the Minnesota State Florists Association, the State Fair Exhibitors' Organization, the Minnesota Federation of County Fairs, the Minnesota Forestry Association, the Minnesota Horse Council, Minnesota Nursery and Landscape Association, Minnesota Apple Growers' Association, State Grange of Minnesota, Minnesota Farmers' Union, American Dairy Association of the Midwest, and the Minnesota Farm Bureau Federation.

(e) The following societies and associations are entitled to one delegate each: Central Minnesota Vegetable Growers Association, the Minnesota Fruit and Vegetable Growers' Association, Minnesota Shorthorn Breeders' Association, the Minnesota Milking Shorthorn Association, Minnesota Guernsey Breeders' Association, Minnesota Jersey Cattle Club, Minnesota Holstein Association, Minnesota Hereford Breeders, the Minnesota Angus Association, Minnesota Ayrshire Breeders' Association, Minnesota Brown Swiss Association, Minnesota Duroc Breeders', Minnesota Turkey Growers' Association, Minnesota Gladiolus Society, Minnesota Hampshire Sheep Association, Minnesota Suffolk Sheep Association, North American Dairy Sheep Association, and the Minnesota Berkshire Association.

(f) The societies and associations listed in paragraphs (d) and (e) must be active and statewide in their scope and operation, hold annual meetings, and be incorporated under the laws of the state before they are entitled to a delegate. The societies and associations must file with the secretary of state, on or before December 20, a report showing that the society or association has held a regular annual meeting for that year, a summary of its financial transactions for the current year, and an affidavit of the president and secretary that it has a paid-up membership of at least 25. On or before December 31, the secretary of state shall certify to the secretary of the state agricultural society the names of the societies or associations that have complied with these provisions.

(g) If a society or association ceases to exist or otherwise fails to comply with the requirements of paragraph (f), its membership in the state agricultural society and its right to delegates is terminated and it may be replaced by another society or association representing the same or similar interests and chosen by a majority vote of the members of the society at its next annual meeting.

(h) The members of the board of managers of the state agricultural society are members of the society and entitled to one vote each.

**Subd. 2. Eligibility to vote.** On all questions arising for determination by the state agricultural society, including the election of members of the board of managers, each delegate present is entitled to one vote. The society shall not recognize proxies except that when less than three delegates of a county or district agricultural society shall attend the annual meeting, those present may cast the full vote of that society. All delegates must be accredited, in writing, and their credentials must be signed by the president and secretary of the society or association represented.

## 37.04 BOARD OF MANAGERS.

**Subdivision 1. Membership; quorum.** A board of managers shall manage and control the state agricultural society. The board consists of a president and nine other members, two of whom are vice-presidents. Each member represents one of nine regional districts. Six members constitute a quorum for the purposes of any board meeting.

**Subd. 2. Regional districts.** For purposes of electing members of the board of managers of the State Agricultural Society, the regional districts are identical with the nine congressional districts as established by Laws 1933, chapter 185, and are numbered accordingly.

EXHIBIT 4 to Complaint

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

**Subd. 3. Annual meeting.** The annual meeting of the society must be held at the State Fairgrounds or at any other place in Minnesota selected by the board of managers. The meeting must be held during a three-day period selected by the board of managers commencing no earlier than January 2 and no later than January 31. At least 30 days' written notice of the time and place of the annual meeting must be given to all members of the society.

**Subd. 4. Elections.** At the annual meeting, the members of the society shall elect a president from among the members of the board of managers for a term of one year. The president may not be a resident of the fourth or the fifth regional districts. The members shall also elect seven managers as follows:

(1) at the annual meeting on each third year after 1963, one manager from each of the first, third, and sixth regional districts;

(2) at the annual meeting on each third year after 1964, one manager from each of the seventh and ninth regional districts;

(3) at the annual meeting on each third year after 1965, one manager from each of the second and eighth regional districts.

At the annual meeting in each even-numbered year a vice-president must be elected from the fifth regional district, and in each odd-numbered year a vice-president must be elected from the fourth regional district.

**Subd. 5. Regional representatives.** Only one member of the board of managers, exclusive of the president, may be a resident of any one regional district. On the day before the last day of the annual meeting, the accredited delegates to the meeting from each regional district whose manager's term expires in that year shall meet together at the place of the annual meeting and nominate and certify to the annual meeting the choice of that district for manager. At the time fixed for the election of the president of the society and after the nominations have been certified, presented, and read to the annual meeting, the annual meeting shall proceed to elect managers to fill all expiring terms.

**Subd. 6. Vacancies.** A vacancy which occurs before the expiration of any term of office of a member of the board of managers may be filled by the remaining members of the board. Any person appointed to fill a vacancy holds office only until the next annual meeting of the society, at which a successor must be elected in the manner provided to serve the balance of the unexpired term.

## 37.05 OFFICERS; COMPENSATION; EXPENSES.

The annual honorarium of the president of the board of managers is $1,400, and that of the other members is $1,000 each.

On the final day of each annual meeting of the society the board shall elect a secretary to hold office for one year and until a successor is elected and qualified. The board shall set the compensation of the secretary. The board may also appoint a treasurer for the term of one year and fix the treasurer's compensation. The treasurer shall keep all accounts and fiscal records of the society. The board may designate the secretary as the treasurer of the society.

The board may allow the traveling expenses of its members and of the secretary and treasurer or other employees while in the performance of their official duties. Claims for traveling expenses must be itemized in full and verified before allowance.

## 37.06 SECRETARY; LEGISLATIVE AUDITOR; DUTIES; REPORT.

The secretary shall keep a complete record of the proceedings of the annual meetings of the state agricultural society and all meetings of the board of managers and any committee of the board, keep all accounts of the society other than those kept by the treasurer of the society, and perform other duties as directed by the board of managers. On or before December 31 each year, the secretary shall report to the governor for the fiscal year ending October 31 all the proceedings of the society during the current year and its financial condition as appears from its books. This report must contain a full, detailed statement of all receipts and expenditures during the year.

EXHIBIT 4 to Complaint

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

The books and accounts of the society for the fiscal year must be examined and audited annually by the legislative auditor. The cost of the examination must be paid by the society to the state and credited to the general fund.

A summary of this examination, certified by the legislative auditor, must be appended to the secretary's report, along with the legislative auditor's recommendations and the proceedings of the first annual meeting of the society held following the secretary's report, including addresses made at the meeting as directed by the board of managers. The summary, recommendations, and proceedings must be printed in the same manner as the reports of state officers. Copies of the report must be printed annually and distributed as follows: to each society or association entitled to membership in the society, to each newspaper in the state, and the remaining copies as directed by the board of managers.

## 37.07 MONTHLY STATEMENTS BY SECRETARY; PURCHASES, EXPENDITURES.

The secretary of the state agricultural society shall prepare a signed statement each month summarizing receipts and expenditures for the preceding month, which must be approved by the president or a vice-president of the board of managers. The secretary's affidavit must be attached to this statement. The affidavit must state:

(1) That all articles were purchased by or under the secretary's direction, and that to the secretary's best information and belief, all articles purchased by the board of managers were purchased at a fair cash market value and received by the society, and that all services charged for were actually provided;

(2) That neither the secretary nor any person in the secretary's behalf, or the board of managers, to the secretary's best information and belief, had any pecuniary or other interest in any purchase made or services rendered, or received any pecuniary or other benefit from the purchases or services, directly or indirectly, by commission, percentage, deduction, or otherwise; and

(3) That the articles specified conformed in every respect to the goods ordered, in both quality and quantity.

The report must also show the amount of money in the hands of the treasurer of the society.

Copies of the secretary's monthly report must be furnished to the commissioner of finance and to each member of the board of managers no later than the tenth of the month following the month's activities reported.

The board of managers shall designate one or more national or state banks, or trust companies authorized to do a banking business, as official depositories for the society's money, and shall then require the treasurer to deposit all or part of that money in the designated bank or banks. The designation must be in writing and must set forth all the terms and conditions upon which the deposits are made, and it must be signed by the president and secretary and made a part of the minutes of the board. Any bank or trust company designated must qualify as a depository by furnishing a corporate surety bond or collateral as required by section 118A.03, and must, as long as any of the society's money is on deposit with it, maintain the bond or collateral in the amounts required by that section. No bond or collateral is required to secure any deposit if it is insured under federal law, as provided in section 118A.03.

## 37.13 OWNERSHIP OF MONEY AND PROPERTY; CAPITAL IMPROVEMENTS.

**Subdivision 1. Use of money.** The state owns all money and other property of the society in the name of the society and there may be no division of its assets among society members. Money received by the society must be used for holding its annual fair and for other exhibitions or expositions the society holds, for the improvement of the fairgrounds, for the payment of expenses, premiums, and purses, for the acquisition of real and personal property, for the use and benefit of the society, and for furnishing attractions and amusements the board of managers considers necessary for the success of its fairs and other exhibitions and expositions.

## 37.14 MANAGEMENT OF PROPERTY; GENERAL OFFICES.

EXHIBIT 4 to Complaint

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

The custody, management, and control of the fairgrounds and all fairgrounds structures are vested in the society as a department of the state, and its general offices containing its property and records must be maintained upon the fairgrounds.

## 37.15 EXHIBITIONS.

The society shall hold upon the fairgrounds an annual fair and may invite the cooperation of any other states or countries in that fair. The society shall provide for and pay premiums, and money spent for premiums, exhibits, or other displays must be for the purpose of encouraging agriculture, horticulture, stock-breeding, manufactures, and the mining, mechanical, and industrial arts and sciences.

## 37.16 RULES; VIOLATION.

The society may make all bylaws, ordinances, and rules consistent with law which it considers necessary or proper for the government of the fairgrounds and all fairs to be held on them, and for the protection, health, safety, and comfort of the public on the fairgrounds. The bylaws, ordinances, and rules are effective when filed with the secretary of the society. The violation of a bylaw, rule, or ordinance of the society is a misdemeanor.

## 37.17 SHOWS, EXHIBITIONS, PERFORMANCES, PRIVILEGES.

**Subdivision 1. License, regulation.** The society may license and regulate shows, exhibitions, performances, and privileges on the fairgrounds, revoke licenses, and prohibit, remove, and summarily stop exhibitions, performances, or privileges which violate society rules or other law.

**Subd. 2. Service of process.** The acceptance of any license given pursuant to subdivision 1 by a nonresident of Minnesota is an appointment by the nonresident of the secretary of state to be a lawful agent upon whom may be served all legal processes in any action or proceeding against the nonresident resulting from the operation of the licensed show, exhibition, performance, or privilege. The acceptance of a license by the nonresident signifies agreement that service of process upon the secretary of state has the same effect as service upon the nonresident personally. Publication of summons need not be made upon the nonresident. In all cases under this subdivision, service of process or service of any writ or notice in an action or proceedings must be made upon the secretary of state in the manner provided by law for service upon residents of the state, and has the same effect as personal service within the state upon the nonresident. After a nonresident appears in an action or proceeding by an attorney residing in Minnesota, papers must be served upon the attorney.

**Subd. 4. Solicitation.** No person may solicit money or sell or distribute any merchandise or material of any kind without a license issued by the society authorizing the solicitation, sale, or distribution from a fixed location on the fairgrounds.

## 37.18 UNLICENSED OR IMPROPER EXHIBITION.

A person who engages in a play, game, concert, or theatrical or other performance, or who exhibits a show of any kind on the fairgrounds without a license from the society is guilty of a misdemeanor and must be removed from the fairgrounds.

A person who sells, distributes, or exhibits obscene materials or performances is guilty of a misdemeanor and the board of managers of the society shall suspend that person's license and require the forfeiture of all money paid to the society in connection with the performance or exhibit.

## 37.19 CONTRACTS.

The society may contract in its own name and through its officers and agents without advertising for or publicly requesting bids. This chapter and all ordinances, bylaws, and rules adopted by the society's board of managers are a part of every contract entered into with any exhibitor, privilege holder, lessee, licensee, or other person. The society may contract for the purchase of services from any business, municipality, county, state agency, or department. The society may purchase, sell, lease, or otherwise engage in transactions respecting real property in its own name, and with terms and conditions acceptable

EXHIBIT 4 to Complaint

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

to its board of managers. The provisions of section 37.01 apply to the specific properties described in it, except space rental contracts and ground leases for a term of one year or less. The society shall submit to the state executive council for its approval, as provided by chapter 9, all its transactions involving real properties, and no transaction involving real property is final until it is approved by the executive council. All transactions involving real property previously made by the society are ratified, confirmed, and approved.

## 37.20 SPECIAL PEACE OFFICERS.

The secretary or the president of the society may appoint, in a writing signed by either of them, as many peace officers, as defined in section 626.84, subdivision 1, clause (c), as are necessary, both during the annual fair and throughout the year for the regulation of the Minnesota state fairgrounds. These peace officers, before entering upon their duties, shall take and subscribe the usual oath of office, endorsed upon their appointment. They have upon the fairgrounds all the power and authority of peace officers and may, within these limits, without warrant, arrest any person found violating state law or any rule, bylaw, or ordinance of the society. They may summarily remove the persons and property of the offenders from the grounds, and take them before any court of competent jurisdiction to be dealt with according to law. Each peace officer shall wear an appropriate badge of office while acting as a peace officer. The society may also contract with the state, any county, or any municipality for police service and protection on the fairgrounds.

## 37.21 SALE OF LIQUORS.

**Subdivision 1. Liquor prohibited.** Except as provided in subdivision 2, no person may sell, barter, give away, or otherwise dispose of or introduce, have, or keep for barter, gift, or sale, any intoxicating liquors of any kind upon the State Fairgrounds, or aid and abet any of those acts. The presence and possession of any kind of these liquors, in any quantity, upon the person or upon the premises leased or occupied by any person within these limits is a public nuisance and is prima facie evidence of the purpose of the person to barter, give away, or sell the liquor. Any person who violates this section is guilty of a misdemeanor.

**Subd. 2. Exceptions.** The following exceptions apply:

(a) The State Agricultural Society may issue, under terms and conditions it chooses, licenses for the sale, possession, and consumption of intoxicating liquors at special events taking place on the fairgrounds at times other than during the annual fair including, but not limited to, family reunions, class reunions, weddings, conventions, and similar events.

(b) The State Agricultural Society may issue, under terms and conditions it chooses, consistent with state law, licenses for the sale, possession, and consumption of intoxicating malt liquors during the annual fair or at other times of their choosing, provided that at least one Minnesota brewed malt liquor is made available for sale at each allowed location within the grounds.

(c) The State Agricultural Society may issue a license for the sale and consumption of wine to a holder of a state fair concession's contract with the State Agricultural Society which authorizes the licensee to sell Minnesota-produced wine by the glass at the state fair in connection with the sale of food by the concessionaire. For the purposes of this subdivision, "Minnesota-produced wine" means wine produced by a farm winery licensed under section 340A.315.

**History:** (7800) RL s 3092; 1982 c 625 s 12; 1985 c 265 art 2 s 1; 2000 c 440 s 1; 2007 c 13 art 1 s 4; 2007 c 89 s 1,2; 2010 c 255 s 1

## 37.22 LOCKUP; SEIZURE OF LIQUORS.

The society may provide and maintain a watchhouse or lockup on the fairgrounds for the confinement of offenders and the temporary detention of suspected persons. The society's peace officers shall, without warrant, seize and destroy any intoxicating liquors found upon the fairgrounds.

## 37.24 UNLAWFUL ADMISSIONS.

EXHIBIT 4 to Complaint

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

Any person who steals or unlawfully obtains a ticket, paper, or other writing entitling, or purporting to entitle, the holder to admission to any part of the state fairgrounds or who sells or disposes of a ticket which upon its face appears to be nontransferable and to have been issued to another, without informing the purchaser of its character, is guilty of a misdemeanor.

## 37.25 MISDEMEANORS.

In addition to other misdemeanors specified by statute, during the annual state fair or during any period when the board of managers requires fees for admission to the fairgrounds, every person who trespasses on, enters, or attempts to enter the fairgrounds in any manner, except through the entrance gates, without payment of the required fees or who trespasses on, enters, or attempts to enter any reserved enclosure on the fairgrounds, or who obtains permission to do so by impersonating another or by any misrepresentation or false pretense is guilty of a misdemeanor. A person who is found lurking, lying in wait, or loitering in the immediate vicinity of, or concealed in any building, yard, or premises upon the fairgrounds with intent to commit any offense or mischief is guilty of a misdemeanor.

## 37.27 FAIR FOUNDATION.

The State Agricultural Society may establish a nonprofit corporation to be operated exclusively for charitable purposes as contemplated by sections 170(c)(2) and 501(c)(3) of the United States Internal Revenue Code. Subject to those sections, the corporation must be organized and operated exclusively for the benefit and to carry out the purposes of the state agricultural society for so long as the state agricultural society is and remains an organization as described in section 509(a)(1) or 509(a)(2) of the Internal Revenue Code. The corporation shall solicit, receive, hold, invest, and contribute funds and property for the use and benefit of the state agricultural society in a manner consistent with the public good and primarily for capital expenditures and other needs not funded by other means. The corporation may be known as the Minnesota State Fair Foundation.

## 37.31 ISSUANCE OF BONDS.

**Subdivision 1. Bonding authority.** The society may issue negotiable bonds in a principal amount that the society determines necessary to provide sufficient money for achieving its purposes, including the payment of interest on bonds of the society, the establishment of reserves to secure its bonds, the payment of fees to a third party providing credit enhancement, and the payment of all other expenditures of the society incident to and necessary or convenient to carry out its corporate purposes and powers. Bonds of the society may be issued as bonds or notes or in any other form authorized by law. The principal amount of bonds issued and outstanding under this section at any time may not exceed $20,000,000, excluding bonds for which refunding bonds or crossover refunding bonds have been issued.

**Subd. 2. Refunding of bonds.** The society may issue bonds to refund outstanding bonds of the society, to pay any redemption premiums on those bonds, and to pay interest accrued or to accrue to the redemption date next succeeding the date of delivery of the refunding bonds. The society may apply the proceeds of any refunding bonds to the purchase or payment at maturity of the bonds to be refunded, or to the redemption of outstanding bonds on the redemption date next succeeding the date of delivery of the refunding bonds and may, pending the application, place the proceeds in escrow to be applied to the purchase, retirement, or redemption of the bonds. Pending use, escrowed proceeds may be invested and reinvested in obligations issued or guaranteed by the state or the United States or by any agency or instrumentality of the state or the United States, or in certificates of deposit or time deposits secured in a manner determined by the society, maturing at a time appropriate to assure the prompt payment of the principal and interest and redemption premiums, if any, on the bonds to be refunded. The income realized on any investment may also be applied to the payment of the bonds to be refunded. After the terms of the escrow have been fully satisfied, any balance of the proceeds and any investment income may be returned to the society for use by it in any lawful manner. All refunding bonds issued under this subdivision must be issued and secured in the manner provided by resolution of the society.

EXHIBIT 4 to Complaint

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

**Subd. 3. Kind of bonds.** Bonds issued under this section must be negotiable investment securities within the meaning and for all purposes of the Uniform Commercial Code, subject only to the provisions of the bonds for registration. The bonds issued must be limited obligations of the society not secured by its full faith and credit and payable solely from specified sources or assets.

**Subd. 4. Resolution and terms of sale.** The bonds of the society must be authorized by a resolution or resolutions adopted by the society. The bonds must bear the date or dates, mature at the time or times, bear interest at a fixed or variable rate, including a rate varying periodically at the time or times and on the terms determined by the society, or any combination of fixed and variable rates, be in the denominations, be in the form, carry the registration privileges, be executed in the manner, be payable in lawful money of the United States, at the place or places within or without the state, and be subject to the terms of redemption or purchase before maturity as the resolutions or certificates provide. If, for any reason existing at the date of issue of the bonds or existing at the date of making or purchasing any loan or securities from the proceeds or after that date, the interest on the bonds is or becomes subject to federal income taxation, this fact does not affect the validity or the provisions made for the security of the bonds. The society may make covenants and take or have taken actions that are in its judgment necessary or desirable to comply with conditions established by federal law or regulations for the exemption of interest on its obligations. The society may refrain from compliance with those conditions if in its judgment this would serve the purposes and policies set forth in this chapter with respect to any particular issue of bonds, unless this would violate covenants made by the society. The maximum maturity of a bond, whether or not issued for the purpose of refunding, must be 30 years from its date. The bonds of the society may be sold at public or private sale, at a price or prices determined by the society; provided that:

(1) the aggregate price at which an issue of bonds is initially offered by underwriters to investors, as stated in the authority's official statement with respect to the offering, must not exceed by more than three percent the aggregate price paid by the underwriters to the society at the time of delivery;

(2) The commission paid by the society to an underwriter for placing an issue of bonds with investors must not exceed three percent of the aggregate price at which the issue is offered to investors as stated in the society's offering statement; and

(3) The spread or commission must be an amount determined by the society to be reasonable in light of the risk assumed and the expenses of issuance, if any, required to be paid by the underwriters.

**Subd. 5. Exemption.** The notes and bonds of the society are not subject to sections 16C.03, subdivision 4, and 16C.05.

**Subd. 6. Reserves; funds; accounts.** The society may establish reserves, funds, or accounts necessary to carry out the purposes of the society or to comply with any agreement made by or any resolution passed by the society.

**Subd. 7. Approval; commissioner of finance.** Before issuing bonds under this section, the society must obtain the approval, in writing, of the commissioner of management and budget.

**Subd. 8. Expiration.** The authority to issue bonds, other than bonds to refund outstanding bonds, under this section expires July 1, 2025.

## 37.32 TENDER OPTION.

An obligation may be issued giving its owner the right to tender or the society to demand tender of the obligation to the society or another person designated by it, for purchase at a specified time or times, if the society has first entered into an agreement with a suitable financial institution obligating the financial institution to provide funds on a timely basis for purchase of bonds tendered. The obligation is not considered to mature on any tender date and the purchase of a tendered obligation is not considered a payment or discharge of the obligation by the society. Obligations tendered for purchase may be remarketed by or on behalf of the society or another purchaser. The society may enter into agreements it considers appropriate to provide for the purchase and remarketing of tendered obligations, including:

(1) Provisions under which undelivered obligations may be considered tendered for purchase and new obligations may be substituted for them;

EXHIBIT 4 to Complaint

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

(2) Provisions for the payment of charges of tender agents, remarketing agents, and financial institutions extending lines of credit or letters of credit assuring repurchase; and

(3) Provisions for reimbursement of advances under letters of credit that may be paid from the proceeds of the obligations or from tax and other revenues appropriated for the payment and security of the obligations and similar or related provisions.

## 37.33 BOND FUND.

**Subdivision 1. Creation and contents.** The society may establish a special fund or funds for the security of one or more or all series of its bonds. The funds must be known as debt service reserve funds. The society may pay into each debt service reserve fund:

(1) The proceeds of sale of bonds to the extent provided in the resolution or indenture authorizing the issuance of them;

(2) Money directed to be transferred by the society to the debt service reserve fund; and

(3) Other money made available to the society from any other source only for the purpose of the fund.

**Subd. 2. Use of funds.** Except as provided in this section, the money credited to each debt service reserve fund must be used only for the payment of the principal of bonds of the society as they mature, the purchase of the bonds, the payment of interest on them, or the payment of any premium required when the bonds are redeemed before maturity. Money in a debt service reserve fund must not be withdrawn at a time and in an amount that reduces the amount of the fund to less than the amount the society determines to be reasonably necessary for the purposes of the fund. However, money may be withdrawn to pay principal or interest due on bonds secured by the fund if other money of the society is not available.

**Subd. 3. Investment.** Money in a debt service reserve fund not required for immediate use may be invested in accordance with section 37.07.

**Subd. 4. Minimum amount of reserve at issuance.** If the society establishes a debt service reserve fund for the security of any series of bonds, it shall not issue additional bonds that are similarly secured if the amount of any of the debt service reserve funds at the time of issuance does not equal or exceed the minimum amount required by the resolution creating the fund, unless the society deposits in each fund at the time of issuance, from the proceeds of the bonds, or otherwise, an amount that when added together with the amount then in the fund will be at least the minimum amount required.

**Subd. 5. Transfer of excess.** To the extent consistent with the resolutions and indentures securing outstanding bonds, the society may at the close of a fiscal year transfer to any other fund or account from any debt service reserve fund any excess in that reserve fund over the amount determined by the society to be reasonably necessary for the purpose of the reserve fund.

## 37.34 MONEY OF THE SOCIETY.

The society may contract with the holders of any of its bonds as to the custody, collection, securing, investment, and payment of money of the society or money held in trust or otherwise for the payment of bonds, and to carry out the contract. Money held in trust or otherwise for the payment of bonds or in any way to secure bonds and deposits of the money may be secured in the same manner as money of the society, and all banks and trust companies are authorized to give security for the deposits.

## 37.35 NONLIABILITY.

**Subdivision 1. Nonliability of individuals.** No member of the Society or other person executing the bonds is liable personally on the bonds or is subject to any personal liability or accountability by reason of their issuance.

**Subd. 2. Nonliability of state.** The state is not liable on bonds of the Society issued under section 37.31 and those bonds are not a debt of the state. The bonds must contain on their face a statement to that effect.

EXHIBIT 4 to Complaint

Filed in District Court
State of Minnesota
8/10/2021 8:47 AM

**37.36 PURCHASE AND CANCELLATION BY SOCIETY.**

Subject to agreements with bondholders that may then exist, the Society may purchase out of money available for the purpose, bonds of the Society which shall then be canceled, at a price not exceeding the following amounts:

(1) If the bonds are then redeemable, the redemption price then applicable plus accrued interest to the next interest payment date of the bonds; or

(2) If the bonds are not redeemable, the redemption price applicable on the first date after the purchase upon which the bonds become subject to redemption plus accrued interest to that date.

**37.37 STATE PLEDGE AGAINST IMPAIRMENT OF CONTRACTS.**

The state pledges and agrees with the holders of bonds issued under section 37.31 that the state will not limit or alter the rights vested in the Society to fulfill the terms of any agreements made with the bondholders or in any way impair the rights and remedies of the holders until the bonds, together with interest on them, with interest on any unpaid installments of interest, and all costs and expenses in connection with any action or proceeding by or on behalf of the bondholders, are fully met and discharged. The Society may include this pledge and agreement of the state in any agreement with the holders of bonds issued under section 37.31.

EXHIBIT 4 to Complaint