| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF RAMSEY | SECOND JUDICIAL DISTRICT<br>CASE TYPE: OTHER CIVIL |

Reverend Tim Christopher, Sarah Cade Hauptman, and the Minnesota Gun Owners Caucus,

        Plaintiffs,

v.

Ramsey County,
Bob Fletcher, in his official capacity as
Ramsey County Sheriff, and
the State Agricultural Society,

        Defendants.

Court File No. 62-cv-21-4223

**AMENDED COMPLAINT**

Plaintiffs allege against Defendants as follows:

## INTRODUCTION

1. The Second Amendment to the U.S. Constitution "guarantee[s] the individual right to possess and carry" firearms. *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008). The right to "bear arms," according to the U.S. Supreme Court, includes the ability to "wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person." *Id.* at 584. In *McDonald v. City of Chicago*, 561 U.S. 742, 750, 791 (2010), the Supreme Court confirmed that the rights protected by the Second Amendment are "among those fundamental rights necessary to our system of ordered liberty," and held that the Second Amendment is incorporated as applicable to the states through the Fourteenth Amendment.

2. Minnesota state public policy regarding the right to keep and bear arms is clear. "The legislature of the state of Minnesota recognizes and declares that the second amendment of

the United States Constitution guarantees the fundamental, individual right to keep and bear arms. The provisions of this section are declared to be necessary to accomplish compelling state interests in regulation of those rights." Minn. Stat. § 624.714, subd. 22.

3. Minnesota law supersedes and preempts any inconsistent local regulation regarding the carrying or possession of pistols. *See* Minn. Stat. § 471.633 ("The legislature preempts all authority of a home rule charter or statutory city including a city of the first class, county, town, municipal corporation, or other governmental subdivision, or any of their instrumentalities, to regulate firearms, ammunition, or their respective components to the complete exclusion of any order," excluding regulation of discharge of firearms, and providing "[l]ocal regulation inconsistent with this section is void."); Minn. Stat. § 624.717 (providing that the Minnesota Citizens' Personal Protection Act of 2003 supersedes any local regulation the carrying or possessing of pistols).

4. Minn. Stat. § 624.714 establishes the nature and scope of permits to carry and provides that "[n]o sheriff, police chief, governmental unit, government official, government employee, or other person or body acting under color of law or governmental authority may change, modify, or supplement these criteria or procedures, or limit the exercise of a permit to carry."

5. Minnesota law allows permitted carry even inside the state capitol—an area more serious than the light-hearted State Fair. In order to carry a firearm at the Minnesota State Capitol Complex, a person only need have a valid Minnesota permit to carry. *See* Minn. Stat. § 609.66, subd. 1g(b) & (c).

6. Plaintiffs wish to exercise their fundamental, constitutionally and statutorily protected right to carry loaded, operable handguns on their person, at the annual Minnesota State

2

Fair, for lawful purposes including immediate self-defense. But they cannot because of the laws, regulations, policies, practices, and customs that Defendants have been enforcing and continue to actively enforce today.

## PARTIES

7.  Plaintiff Rev. Tim Christopher is a U.S. citizen and resident of Anoka County who preaches in North Minneapolis. He has carried his pistol more or less daily for the past eight years. He and his family are regular attendees to the State Fair. He has seen a rise in crime, and for the work he does, Rev. Christopher believes it's important to have a way to protect himself, including at the State Fair. At his request and direction, and acting as his agent, the Minnesota Gun Owners Caucus paid for a gate-admission ticket he bought for the 2021 Minnesota State Fair. He also purchased a bus ticket to travel to the 2021 State Fair because he intended to attend the 2021 State Fair. However, Rev. Christopher did not attend because he was unable to exercise his constitutionally and statutorily protected right to carry a firearm at the 2021 Minnesota State Fair, and hopes the Court will protect and enforce his right to do so at future State Fairs.

8.  Plaintiff Sarah Cade Hauptman is a U.S. citizen and resident of Ramsey County and a member of Plaintiff Minnesota Gun Owners Caucus. She has been going to the Minnesota State Fair for as long as she can remember. She received her permit to carry a firearm in 2013, and has been a responsibly armed citizen ever since. She wishes to carry at State Fairs for the purpose of self-defense, and would not pose any threat or danger to the public. At her request and direction, and acting as her agent, the Minnesota Gun Owners Caucus paid for a gate-admission ticket she bought for the 2021 Minnesota State Fair. She attempted to attend the 2021 Minnesota State Fair, but was refused entry due to her exercise of her right to carry. Plaintiff Hauptman was unable to

exercise her constitutionally and statutorily protected right to carry a firearm at the 2021 Minnesota State Fair, and hopes the Court will protect and enforce her right to do so at future State Fairs.

9. Plaintiff Minnesota Gun Owners Caucus ("MGOC") is a 501(c)(4) Minnesota non-profit corporation organized under Minn. Stat. ch. 317A. MGOC seeks to protect and promote the right of citizens to keep and bear arms for all lawful purposes. MGOC serves its members and the public through advocacy, education, elections, legislation, and legal action. MGOC's members reside both within and outside Minnesota. Having associational standing, MGOC brings this action on behalf of its members, including the named Plaintiffs herein. MGOC's Minnesota members have been adversely and directly harmed by Defendants' enforcement of the laws, regulations, policies, practices, and customs challenged herein.

10. Defendant Bob Fletcher is sued in his individual capacity and in his official capacity as Sheriff of Ramsey County. As sheriff, he is responsible for administering and enforcing in his County the State's laws, regulations, policies, practices, and customs concerning the carrying of weapons. *See, e.g.*, Minn. Stat. § 624.714 ("Applications by Minnesota residents for permits to carry shall be made to the county sheriff where the applicant resides.").

11. Defendant Ramsey County is a county pursuant to Minn. Stat. ch. 383A having the general powers and duties proscribed by state law.

12. Defendant State Agricultural Society is a public corporation. *See* Minn. Stat. 37.01. The Agricultural Society exists pursuant to state law. The Agricultural Society has capacity to sue and be sued.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction as a court of general jurisdiction.

14. Venue is proper in this judicial district.

## FACTS

**The Agricultural Society's Character as a Governmental Subdivision with Criminal Power**

15. The Agricultural Society is a public corporation.

16. The Agricultural Society is a department of the state. Minn. Stat. § 37.14; *Berman v. Minn. State Agr. Society*, 93 Minn. 125, 128, 100 N.W. 732, 733 (1904).

17. The Agricultural Society is a governmental subdivision pursuant to Minn. Stat. § 471.633.

18. The Agricultural Society is the type of entity that is "an arm or agency of the state." *Berman*, 93 Minn. at 129, 100 N.W. at 733.

19. Officers of the Agricultural Society are "servants of the state performing governmental duties and functions." *Id.*

20. The Agricultural Society is "directly under the exclusive authority of the state, which may change its officers or its organization and provide for different regulations for the government of the fair, as the best interest of the public may, in the judgment and wisdom of the Legislature" decides. *Id.*

21. State law allows the Agricultural Society to make bylaws, ordinances, and rules "of a legislative character similar to that conferred upon municipalities." *Id.*

22. The Agricultural Society's bylaws, ordinances, and rules must be "consistent with law" under Minn. Stat. § 37.16.

23. The Agricultural Society's bylaws, ordinances, and rules are not effective until filed with the secretary of the society. Minn. Stat. § 37.16.

24. A violation of one of Agricultural Society's validly promulgated bylaws, rules, or ordinances is a misdemeanor. Minn. Stat. § 37.16.

25. The Agricultural Society delegates represent all 87 county fairs in Minnesota, along with delegates from various regional and statewide agricultural groups.

26. Those delegates annually elect a 10-member board of managers to set policy and provide oversight for the fair. Nine members represent the Agricultural Society's nine regional districts, and the 10th member serves at large.

27. The State Agricultural Society is responsible for all capital work and maintenance of the 322-acre fairgrounds, which is state property.

28. During each State Fair, the Agricultural Society is a landlord to tenants who rent spaces or lots at the State Fair.

29. Jerry Hammer is the Agricultural Society's general manager.

30. Jerry Hammer is the Agricultural Society's secretary.

31. A copy of the Minnesota State Agricultural Society Rules was previously filed with the original Complaint as Exhibit 4 ("2021 Agricultural Society Rules"). These are available at https://assets.mnstatefair.org/pdf/competition/21-rules-regs.pdf (last visited July 31, 2021). These rules were promulgated pursuant to authority granted the Minnesota State Agricultural Society by Minn. Stat. § 37.16.

32. The 2021 Agricultural Society Rules were approved during the Agricultural Society's most recent January meeting.

33. As of August 10, 2021, the date the original Complaint was filed, the 2021 Agricultural Society Rules did not prohibit carrying a pistol by a person holding a permit to carry under state law.

**Prior fairs; Changes to 2021 State Fair**

34. The Agricultural Society decided not to hold the 2020 Minnesota State Fair due to the COVID-19 pandemic.

35. In May 2021, Paul Paulos the then-chief of police for the State Fair police retired.

36. After Chief Paulos' retirement, the Agricultural Society's Mr. Hammer decided it would be best to hire an outside law enforcement agency rather than make equipment upgrades and training improvements that Chief Paulos had recommended.

37. Previously, the State Fair Police Department had coordinated fair security with its own staff and paid volunteers from law enforcement agencies around the state.

38. Plaintiff MGOC has been informed, on an off-the-record basis, that previously, until at least 2016, former Chief Paulos would issue carry permits to select vendors and exhibitors without an official, formal application process. Former Chief Paulos would allow vendors and exhibitors who held these permits to possess pistols on the fairgrounds during the State Fair.

39. At State Fairs prior to the 2021 State Fair, the Agricultural Society knowingly allowed MGOC members to lawfully carry firearms, so long as they were concealed.

40. On August 17, 2021, the Agricultural Society enacted "New Rule" 1.24, ("New Rule") previously filed with the Court on August 18, 2021, which provides that persons possessing personal pistols, including those complying with Minn. Stat. § 624.714, will be denied admission to the State Fair.

**Joint Powers Agreement between Agricultural Society and Ramsey County, RCSO**.

41. After the Agricultural Society disbanded the State Fair's existing police department, it wished to partner with another law enforcement agency for the 2021 State Fair.

7

42. Minnesota law allows political subdivisions to enter into joint powers agreements with each other to jointly or cooperatively exercise any power common to the contracting parties. *See* Minn. Stat. § 471.59, subd. 1.

43. Agricultural Society is a political subdivision of the state such that is has capacity to enter into a joint powers agreement under Minn. Stat. § 471.59, subd. 1(b).

44. Ramsey County, on behalf of the Ramsey County sheriff's office, entered into a Joint Powers Agreement with the Agricultural Society.

45. Previously filed as Exhibit 1 to the original Complaint is a true and correct, but unsigned, copy of the Joint Powers Agreement.

46. The Ramsey County Board approved the Joint Powers Agreement on Tuesday July 27, 2021.

47. Hammer executed the Joint Powers Agreement on behalf of the Agricultural Society.

48. The Joint Powers Agreement was effective from August 25th 2021 through September 6th 2021.

49. Under the Joint Powers Agreement, Defendant Ramsey County through Defendant Sheriff Fletcher's office, agreed to provide law enforcement services to the Agricultural Society. These security services included patrolling all areas of the fairgrounds, enforcement of state law, and enforcement of the Agricultural Society's bylaws, rules, and ordinances.

50. The Joint Powers Agreement gave Defendant Ramsey County, through Sheriff Fletcher's office, sole control over the manner and standards of performance, the discipline of law enforcement officers, and other matters related to the provision of the security services under that agreement.

51. Defendant Sherriff Fletcher had final, conclusive decision-making authority between the parties to the Joint Powers Agreement in the event of a dispute between them as to the extent of the duties and functions to be rendered under that agreement.

52. Defendant Sherriff Fletcher had ultimate command of law enforcement matters within the fairgrounds during the term of the Joint Powers Agreement.

53. Defendant Agricultural Society promised full cooperation of its officers, agents, and employees to Ramsey County and Sheriff Fletcher.

54. Under the Joint Powers Agreement, the Agricultural Society accepted responsibility for the acts or emissions of County and Sheriff employees, officials, representatives, and agents acting within the scope of the Joint Powers Agreement.

55. The Agricultural Society promised to defend and indemnify Ramsey County and Sheriff Fletcher under the Joint Powers Agreement for any claim or lawsuit against the County or the Sheriff related to the County's performance of duties under the Joint Powers Agreement.

56. Under the Joint Powers Agreement, the Agricultural Society and Ramsey County agreed to be considered "a single governmental unit" determining total liability for damages under Minn. Stat. § 471.59, subd. 1a(b).

57. The Agricultural Society is indemnified by the State of Minnesota pursuant to Minn. Stat. § 3.723.

**Plaintiffs, the 2021 State Fair, and future State Fairs**

58. The State Fair began on August 26, 2021 and ended September 6, 2021.

59. The Agricultural Society prohibited any Minnesota citizens who held a permit to carry pursuant to Minn. Stat. § 624.714 from carrying a firearm at the 2021 State Fair pursuant to the new Agricultural Society's New Rule.

60. Sheriff Fletcher and Ramsey County enforced the New Rule at the 2021 State Fair.

61. Plaintiff Hauptman was denied entry into the State Fair due to carrying her personal pistol although she was in compliance with Minn. Stat. § 624.714.

62. Plaintiff Rev. Christopher made the difficult decision to avoid the State Fair due to his inability to protect himself by concealing and carrying his personal pistol in compliance with Minn. Stat. § 624.714.

63. With the addition of the New Rule, law abiding Minnesota citizens will be unable to lawfully carry firearms pursuant to a permit to carry at future State Fairs.

64. The New Rule is unconstitutional and in violation of Minnesota law.

65. As a public corporation, the Agricultural Society is a "government entity" subject to the MGDPA. *See* Minn. Stat. § 13.02, subd. 7a.

66. The Agricultural Society is a "political subdivision" pursuant to the MGDPA, as a "political subdivision" includes an entity created pursuant to law. *See* Minn. Stat. § 13.02, subd. 11.

67. In response to a data practices act request, on February 12, 2013, an attorney for the Agricultural Society wrote that the Agricultural Society did not have any written policies, procedures, or protocols regarding firearms.

68. On December 15, 2015, an attorney for the Agricultural Society wrote that the Agricultural Society "does not have any written policy concerning regulation of guns on the fairgrounds."

69. At the time the original Complaint was filed on August 10, 2021, the Agricultural Society did not have any written policy concerning regulation of guns on the fairgrounds.

70. On June 28, 2021, the MGOC made another data practices act request to the Agricultural Society. That request sought five categories of government data. Previously filed with the original Complaint as Exhibit 2 is a true and correct copy of the request.

71. In response to that request, an attorney for the Agricultural Society responded on July 9, 2021. Previously filed with the original Complaint as Exhibit 3 is a true and correct copy of that July 9, 2021 response.

72. The Agricultural Society's July 9, 2021 response admitted the Agricultural Society does not have a data inventory policy required by Minn. Stat. § 13.025, subd. 1; a public data access policy required by Minn. Stat. § 13.025, subd. 2; and a data subject rights and access policy required by Minn. Stat. § 13.025, subd. 3.

73. The Agricultural Society's July 9, 2021 response provided no copies of any bylaws, ordinances, or rules, as those terms are used in Minn. Stat. § 37.16, that had been filed with the secretary of the Agricultural Society and were in force. Instead, that letter referenced https://www.mnstatefair.org/faq/.

74. The Agricultural Society's website's identification of prohibited items, https://www.mnstatefair.org/faq/allowed-and-prohibited-items/ ("Website FAQs"), are not "bylaws, ordinances, and rules consistent with law" within the meaning of Minn. Stat. § 37.16.

75. The Website FAQs disclaim their own accuracy. For example, at https://www.mnstatefair.org/faq/health-and-safety/ (last visited July 31, 2021), it prominently states "Please note: This information has not yet been updated for 2021. Please check back in the spring and summer!"

76. Posting a document to a website does not constitute the act of filing "with the secretary of the society" within the meaning of Minn. Stat. § 37.16.

11

77. Minn. Stat. § 37.16 does not authorize the Agricultural Society to promulgate bylaws, ordinances, and rules within the meaning of Minn. Stat. § 37.16 simply by updating a website. Validly promulgating rules is a serious act, as violations are a crime. Criminal laws cannot be validly enacted on the fly via surreptitious website updates.

78. The Agricultural Society purported to prohibit from the 2021 State Fair all weapons including pistols, but at the time the original complaint was filed on August 10, 2021, in fact had not lawfully promulgated any such prohibition.

79. The Agricultural Society's Website FAQs have not been "filed with the secretary of the society" within the meaning of Minn. Stat. § 37.20.

80. Although the Website FAQs states that firearms are not allowed on the fairgrounds, Agricultural Society had not, in fact, promulgated any bylaws, ordinances, or rules within the meaning of Minn. Stat. § 37.20, prohibited firearms on the grounds at the time the original Complaint was filed on August 10, 2021.

81. The Agricultural Society board, and not its general manager or secretary, has the authority to promulgate bylaws, ordinances, or rules within the meaning of Minn. Stat. § 37.20.

82. The Agricultural Society board of managers had not regulated the possession of firearms on the fairgrounds at the time the original Complaint was filed on August 10, 2021.

83. It was only after this action was filed that the Agricultural Society enacted a formal prohibition of firearms from the State Fair on August 17, 2021, a mere nine days before the 2021 State Fair began.

84. Up until the formal prohibition was enacted, Minnesotans who have a permit to carry pistols under Minn. Stat. § 624.714 could lawfully carry a pistol on the fairgrounds during the State Fair.

85. If Rev. Christopher or Ms. Hauptman, or any other MGOC members had attempted to enter the State Fair while carrying under a permit, they would have been refused entry under the Agricultural Society's website's prohibitions on firearms and their New Rule 1.24.

86. In fact, Plaintiff Hauptman was refused entry to the 2021 State Fair by the Agricultural Society.

87. The Agricultural Society intends to enforce the New Rule at future State Fairs.

88. If Ramsey County or its employees, officials, representatives, or agents determine that Rev. Christopher or Ms. Hauptman, or any other permit-carrying MGOC members possess a pistol inside the fairgrounds during the State Fair, such a permit-holder will, by virtue of that possession, be treated as having violated a valid, effective bylaw, ordinance or rule of the Agricultural Society, which is a criminal misdemeanor under Minn. Stat. § 37.16.

89. If Sheriff Fletcher, or any other law enforcement personnel directly or indirectly subordinate to him, had determined that Rev. Christopher or Ms. Hauptman, or any other permit-carrying MGOC members possess a pistol inside the fairgrounds during the State Fair, such a permit-holder would have, by virtue of that possession, be treated as having violated a valid, effective bylaw, ordinance or rule of the Agricultural Society, which is a criminal misdemeanor under Minn. Stat. § 37.16.

**COUNT 1—Action under 42 U.S.C. § 1983 for Deprivation of all Plaintiffs' Individual Right to Bear Arms**
**(*Against all Defendants*)**

90. The foregoing paragraphs are hereby incorporated herein as if set forth in full.

91. Plaintiffs have the right to keep and bear arms under the Second Amendment to the United States Constitution.

92. Plaintiffs' right to keep and bear arms was unmistakably acknowledged and confirmed by the 2008 United States Supreme Court case of *District of Columbia v. Heller*, 128 S.Ct. 2783 (U.S., 2008).

93. "The legislature of the state of Minnesota recognizes and declares that the second amendment of the United States Constitution guarantees the fundamental, individual right to keep and bear arms." Minn. Stat. § 524.714, subd. 22.

94. The actions of Defendants, who acted under color of state law, in refusing to allow Plaintiffs to lawfully carry firearms into and at the State Fair are in violation of the constitutional right to keep and bear arms and state law.

95. The actions of Defendants in threatening to enforce the Agricultural Society's New Rule are in violation of the constitutional right to keep and bear arms and state law.

96. As a direct and proximate result of the aforementioned conduct of Defendants Plaintiffs have been damaged.

97. In addition to their actual damages, Plaintiffs are entitled to damages for the constitutional violations as herein described and reasonable attorneys' fees and costs.

**COUNT 2—Permit-to-carry declaratory and injunctive relief (*Against all Defendants*)**

98. The foregoing paragraphs are hereby incorporated herein as if set forth in full.

99. Plaintiffs are entitled to declaratory relief pursuant to Minn. Stat. Ch. 555.

100. Plaintiffs have a bona fide legal interest which Defendants have prejudiced.

101. Plaintiffs allegations against Defendants present an actual, justiciable controversy.

102. The Court may also issue injunctive relief pursuant to Minn. Stat. § 555.08.

103. As detailed below, Plaintiffs seek declaratory and injunctive relief in forms sufficient to allow them to lawfully carry a pistol on the fairgrounds during the State Fair.

## COUNT 3—Mandamus
### (*Against all Defendants*)

104. The foregoing paragraphs are hereby incorporated herein as if set forth in full.

105. Minn. Stat. § 586.01 specifically authorizes the use of mandamus "to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station."

106. Minn. Stat. § 586.02 further provides that "[t]he writ shall issue on the information of the party beneficially interested, but it shall not issue in any case where there is a plain, speedy and adequate remedy in the ordinary course of law."

107. Thus, to obtain mandamus relief, a petitioner need show only that the respondent "(1) failed to perform an official duty clearly imposed by law; (2) that, as a result, the petitioner suffered a public wrong specifically injurious to the petitioner; and (3) that there is no other adequate legal remedy." *N. States Power Co. v. Minn. Metro. Council*, 684 N.W.2d 485, 491 (Minn. 2004) (citations omitted).

108. As set forth above, the Agricultural Society had a duty to refrain from enacting laws, ordinances, or rules which contravene Minnesota State law.

109. As set forth above, the Ramsey County and Bob Fletcher, in his capacity as Ramsey County Sheriff had a duty to refrain from enforcing ordinances which contravene Minnesota State law.

110. The Defendants have not complied with their duties.

111. Plaintiffs have suffered a public wrong specifically injurious to them.

112. Plaintiffs have no plain, speedy, and adequate remedy in the ordinary course of law.

15

113. Plaintiffs demand a writ of mandamus compelling Defendants' compliance with Minnesota law, specifically, a writ enjoining Defendants from enforcing the New Rule.

### COUNT 6—Mandamus Damages
(*Against all Defendants*)

114. The foregoing paragraphs are hereby incorporated herein as if set forth in full.

115. Minn. Stat. § 586.09 provides that "[a] plaintiff who is given judgment, shall recover the damage sustained, together with costs and disbursements."

116. The Minnesota Court of Appeals noted that mandamus damages are "automatic" under § 586.09.  See *Pigs R Us, LLC v. Compton Tp*., 770 N.W.2d 212, 216 (Minn. App. 2009).

117. Plaintiffs are entitled to recovery of damages which they have incurred or will incur due to Agricultural Society's failure to comply with Minnesota law.

### COUNT 7—Breach of Contract
(*Against Defendant Agricultural Society*)

118. The foregoing paragraphs are hereby incorporated herein as if set forth in full.

119. Plaintiffs and the Agricultural Society entered into an agreement whereby Plaintiffs paid money in exchange for the right to enter the gates to access to the State Fair (the "Contract").

120. The parties' Contract is a valid enforceable contract under Minnesota law.

121. Plaintiffs fulfilled their contractual obligations necessary to demand performance from Defendant.

122. Defendant has failed to comply with its obligations under the parties' Contract, including without limitation, attempted enforcement of an illegal provision thereof.

123. A contract which is illegal is void. However, where only a portion of the contract is illegal, and the illegal portion is severable, the remainder of the contract will be enforced. A

16

contract will be deemed severable when the illegal portion of the contract does not affect the remaining portions of the contract and if the remainder of the contract can be enforced if the unlawful provision is stricken.

124. The illegal portion of the Contract, i.e. provision preventing lawful possession of a firearm within State Fairgrounds, is illegal and severable from the remainder of the Contract.

125. As a direct and proximate result of Defendants breaches of contract Plaintiffs have and continue to suffer damages the exact amount to be determined at trial.

## DEMAND FOR RELIEF

126. WHEREFORE, Plaintiffs request judgment be entered against Defendant as follows:

    a. Nominal damages;

    b. Compensatory damages;

    c. Declaratory judgment against Defendants specifying that Minnesotans who hold a permit to carry a pistol valid under state law may not be excluded or ejected from the Minnesota State Fair;

    d. Declaratory judgment against the Agricultural Society for breach of contract, and a declaratory ruling specifying that the Agricultural Society may not impose unlawful terms in future contracts;

    e. Issue injunction prohibiting Defendants, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them, from:

        (i) excluding from the State Fair any person who has a permit to carry a pistol on the basis that such a person possesses a firearm;

        (ii) ejecting or removing from the State Fair any person who has a permit to carry a pistol on the basis that such a person possesses a firearm;

  (iii) enforcing the following:

    (1) any purported or actual bylaw, rule, or ordinance of the Agricultural Society contrary to Minn. Stat. § 471.633;

    (2) any purported or actual bylaw, rule, or ordinance of the Agricultural Society contrary to Minn. Stat. §§ 624.714-.717;

    (3) any purported or actual power shared pursuant to Defendants' Joint Power Agreement contrary to Minn. Stat. § 471.633;

    (4) any purported or actual power shared pursuant to Defendants' Joint Power Agreement contrary to Minn. Stat. §§ 624.714-.717; and

  (iv) taking any other adverse action against any person who has a permit to carry a pistol on the basis that such a person possesses a firearm during any State Fair.

f. A writ of mandamus consistent with the facts herein;

g. Award Plaintiffs' full costs, expenses, and reasonable attorneys' fees incurred in this action; and

h. Such other, different, and further relief as this Court deems just and proper.

Dated: September 16, 2021          **TAFT STETTINIUS & HOLLISTER LLP**

By: *s/ Scott M. Flaherty*
    Scott M. Flaherty (#388354)
    Andrew S. Dosdall (#391076)

2200 IDS Center
80 South 8th Street
Minneapolis, MN 55402-2157
Telephone: (612) 977-8400
Fax: (612) 977-8650
Email: sflaherty@taftlaw.com
          adosdall@taftlaw.com

ATTORNEYS FOR PLAINTIFFS
REVEREND TIM CHRISTOPHER, SARAH CADE HAUPTMAN, AND THE MINNESOTA GUN OWNERS CAUCUS