## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Reverend Tim Christopher, Sara Cade Hauptman, and the Minnesota Gun Owners Caucus, | Court File No.: 21-cv-02292-JRT-KMM |
| Plaintiffs, | |
| v. | |
| Ramsey County, Bob Fletcher, *in his official capacity as* Ramsey County Sheriff, and the State Agricultural Society, | **DEFENDANT STATE AGRICULTURAL SOCIETY'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT** |
| Defendants. | |

---

## <u>INTRODUCTION</u>

Plaintiffs bring this action in an effort to force the State Agricultural Society (the "Society," the "State Fair," or the "Fair") to allow them to carry guns to the Minnesota State Fair. Following the denial of their motion for temporary injunction, brought on the eve of the 2021 Fair in Ramsey County District Court, Plaintiffs have asserted amended claims, attempting to remedy the pleading infirmities that led the Ramsey County District Court to conclude their claims were not likely to succeed. The Amended Complaint must be dismissed because it fails to state any claim upon which relief may be granted. The Society is not a proper defendant under 42 U.S.C. § 1983; the Second Amendment does not guarantee Plaintiffs an unqualified right to carry guns at the State Fair; the Society has not failed to perform any duty clearly established under Minnesota law; and Plaintiffs' convoluted breach-of-contract claim fails to allege essential elements of that claim. For the

reasons set forth below, the Society respectfully requests that the Court grant its Motion to Dismiss.

## ALLEGATIONS OF THE AMENDED COMPLAINT

The Society's board sets policy for and has oversight over the State Fair event. (Am. Compl. ¶ 26.) The State Fair is "a temporary event attracting great numbers of visitors who come to the event for a short period to see and experience the host of exhibits and attractions at the Fair." *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 651 (1981). The "bulk" of the fairgrounds is "covered by permanent buildings, temporary structures, parking lots, and connecting thorough-fares." *Id.* at 650.

Plaintiffs' Amended Complaint alleges several facts regarding the Society's history of prohibiting firearms at the State Fair. The Amended Complaint describes and quotes from a December 2015 letter from the State Fair's attorney to Plaintiffs regarding the Fair's prohibition on firearms. (Am. Compl. ¶ 68; Hammer Decl. ¶ 21, Ex. C at 1 (ECF No. 2-21, at 15[1]).) In the December 2015 letter, the Society's attorney explained that "[i]t is the policy of the Fair, acting through its Board of Directors and management and pursuant to its authority under state law, to prohibit individuals from carrying firearms at the

---

[1]     At the motion to dismiss stage, the Court may consider documents "necessarily embraced by the complaint[.]" *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012). "Documents necessarily embraced by the pleadings include documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Id.* (quoting *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir.2003)). The December 2015 letter is necessarily embraced by the Amended Complaint because Plaintiffs reference the letter and quote from it in paragraph 68 of the Amended Complaint. *See id.* (considering a letter authored by an attorney because it was "alleged in the complaint and thus necessarily embraced by the complaint").

fairgrounds." (*Id.*) Plaintiffs also allege that the State Fair's frequently asked questions page on its website "states that firearms are not allowed on the fairgrounds." (Am. Compl. ¶ 80.)

On August 17, 2021, the Society enacted Rule 1.24, which provides that persons possessing firearms will be denied admission to the State Fair. (*Id.* ¶¶ 40, 59, 83.) The Rule[2] permits the Society to issue written exceptions when appropriate. (Hammer Decl. ¶ 26, Ex. E ("Rule 1.24") (ECF No. 2-21, at 19-20).) The preamble to Rule 1.24 describes the Society's "compelling interest" in adopting the rule. (Rule 1.24.) As recited by the Society in the preamble, this compelling interest encompasses the following components:

- "[A]t least 20 percent or more of the 2021 State Fair's patrons will be children;"

- "[T]he presence of weapons at the fairgrounds would put the entire entertainment program in serious jeopardy since standard practice throughout the entertainment industry prohibits weapons in entertainment venues, the presence of weapons conflicts with the Society's contractual obligation to provide artists with a safe and secure environment, and many artists demand that weapons be banned from the venues in which they perform;"

- "[T]he Society's dangerous weapons policy is especially necessary and proper for the 2021 State Fair, because during these turbulent times law enforcement officers must not be unnecessarily burdened with sorting out who may be carrying a firearm;"

- "[B]oth the concealed carry and open carry of dangerous weapons within the fairgrounds would cause discomfort to many patrons, and open carry by groups would be perceived as intimidating, thus harming the reputation of the State Fair as a safe, family-friendly place where all Minnesotans may gather; and"

---

[2]     The full text of Rule 1.24, including its preamble, is properly considered at the motion to dismiss stage because the Rule is necessarily encompassed by the pleadings, even though Plaintiffs did not attach it to their Amended Complaint. *See Ashanti*, 666 F.3d at 1151.

- "[T]he Society's dangerous weapons policy is necessary and proper for the government of the fairgrounds, and for the protection, health, safety, and comfort of the public on the fairgrounds, all within the meaning of Minnesota Statutes Chapter 37[.]"

(*Id.*)

Plaintiff Minnesota Gun Owners Caucus ("MGOC"), an associational plaintiff, is a nonprofit that "seeks to protect and promote the right of citizens to keep and bear arms for all lawful purposes." (Am. Compl. ¶ 9.) The Amended Complaint alleges that MGOC's Minnesota members "have been adversely and directly harmed by" the State Fair's rule prohibiting firearms. (*Id.*)

Plaintiff Reverend Tim Christopher carries a pistol more or less daily. (*Id.* ¶ 7.) At his request and direction, MGOC bought a ticket for him to attend the 2021 State Fair, but Christopher did not attend because he would not have been permitted to carry a firearm there. (*Id.* ¶¶ 7, 62.) Plaintiff Sara Cade Hauptman holds a permit to carry a firearm. (*Id.* ¶ 8.) MGOC also bought a ticket for her to attend the 2021 State Fair, but she was refused entry because she was carrying a firearm. (*Id.* ¶¶ 8, 61.)

## PROCEDURAL HISTORY

Plaintiffs initially sued in Ramsey County District Court seeking a declaratory judgment. (Compl. ¶¶ 81-84, 91 (ECF No. 2-2).) Plaintiffs moved for a temporary injunction, which was denied by the state court. (ECF No. 2-27.) The state court concluded that Plaintiffs were not likely to succeed on the merits of their claim because they lacked a private cause of action. (*Id.* at 8-12.) On September 16, 2021, Plaintiffs filed and served an amended complaint. The Amended Complaint adds a claim under 42 U.S.C. § 1983 for

4

violation of the Second Amendment, two counts under Minnesota's mandamus statute, and a claim for breach of contract.[3] (Am. Compl. ¶¶ 90-125.) Defendants timely removed this action on October 15, 2021 pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446(b)(3). (*See* Notice of Removal (ECF No. 1).)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim must be granted where the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts must accept a plaintiff's specific factual allegations as true, but not the plaintiff's legal conclusions. *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459 (8th Cir. 2010). It is not sufficient to make bare assertions that are "'devoid of further factual enhancement'" *Zink v. Lombardi*, 783 F. 3d 1089, 1098 (8th Cir. 2015) (per curiam) (en banc) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to state a claim. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

Issues relating to the scope of Second Amendment protection are appropriately resolved on a motion to dismiss. *See Teixeira v. Cty. of Alameda*, No. C 12-03288 SI, 2013 WL 707043, at \*5-6 (N.D. Cal. Feb. 26, 2013) (granting motion to dismiss Second

---

[3]    The original Complaint asserted a claim under the Minnesota Data Practices Act. Plaintiffs do not assert that claim in the Amended Complaint.

Amendment claim where ordinance restricted the commercial sale of firearms "within 500 feet of 'sensitive places such as schools' and residences"); *Piszczatoski v. Filko*, 840 F. Supp. 2d 813, 821 (D.N.J. 2012) (granting motion to dismiss, "unequivocally [finding] that the challenged provisions [to New Jersey's handgun permit law] fall outside the scope of *Heller*'s Second Amendment right"); *Warden v. Nickels*, 697 F. Supp. 2d 1221, 1228-29 (W.D. Wash. 2010) (granting motion to dismiss Second Amendment claim and equivalent rights under the state Constitution).

## ARGUMENT

The Amended Complaint should be dismissed in its entirety. First, Plaintiffs have not stated a claim under Section 1983 because the Society is not a proper defendant under that statute and, alternatively, because Rule 1.24 does not violate the Second Amendment under *District of Columbia v. Heller*, 554 U.S. 570 (2008), and its progeny. Second, Plaintiffs have failed to state a claim for mandamus relief because their allegations are not consistent with the elements of a mandamus claim and because there is no clearly established duty for the Society to refrain from enforcing its lawful rules and policies. Finally, Plaintiffs have not stated a viable breach-of-contract claim because they have not alleged required factual support for elements of the claim.

## I.    Plaintiffs Have Not Stated a Claim for Relief under Section 1983 and the Second Amendment.

Plaintiffs' Second Amendment claim brought under 42 U.S.C. § 1983 must be dismissed because the Society is not a proper defendant under that statute. Further, Plaintiffs' constitutional claim fails because the Fairgrounds are a sensitive place where

firearms may be prohibited or, alternatively, because Rule 1.24 survives both intermediate scrutiny and strict scrutiny.

### A.    The Society Is Not a Proper Defendant Under Section 1983.

Section 1983 provides a private right of action against "person[s]" who deprive a citizen of federal constitutional or statutory rights. 42 U.S.C. § 1983. To proceed under Section 1983, Plaintiffs must establish that the Society is a "person" within the meaning of the statute. A "person" liable under Section 1983 does not include entities which are "arms of the state" or traditionally protected by Eleventh Amendment immunity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64-65, 70-71 (1989) (explaining that Congress did not express any intent to abrogate Eleventh Amendment immunity when it enacted Section 1983); *see also Indep. Enters. Inc. v. Pittsburgh Water & Sewer Authority*, 103 F.3d 1165, 1173 (3d Cir. 1997) ("[T]he most important inquiry in determining whether a governmental entity is a 'person' within the meaning of § 1983 is whether the entity is an 'arm[] of the State for Eleventh Amendment purposes.'" (cleaned up)); *Eddy v. V.I. Water & Power Auth.*, 955 F. Supp. 468, 476-77 (D. V.I. 1997) (Water and Power Authority, a public corporation, was an arm of the state and not a "person" under Section 1983).

Here, Plaintiffs expressly allege that the Society is a "public corporation" and an "arm" of the state. (Am. Comp. ¶¶ 15-20.) Plaintiffs even cite *Berman v. Minnesota State Agricultural Society*, in which the Minnesota Supreme Court specifically determined that the Society was protected by Eleventh Amendment immunity.[4] 100 N.W. 732, 733 (Minn.

---

[4]    This specific holding in *Berman* was later abrogated by statute. *See Nusbaum v. Blue Earth Cty.*, 422 N.W.2d 713, 717-18 (Minn. 1988). However, the Minnesota

1904). Based on these allegations alone, Plaintiffs fail to allege a viable claim under Section

1983 because the Society is not a proper defendant under that statute.

### B.    Rule 1.24 Does Not Violate the Second Amendment Because the State Fair Is a Sensitive Place.

"Like most rights, the right secured by the Second Amendment is not unlimited."

*Heller*, 554 U.S. at 626. The Supreme Court

> in *Heller* said that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms."

*United States v. Adams*, 914 F.3d 602, 605 (8th Cir. 2019) (quoting *Heller*, 554 U.S. at

626-27). Such "regulatory measures are 'presumptively lawful.'" *Id.* (quoting *Heller*, 554

U.S. at 627 n.26); *see Wade v. Univ. of Mich.*, 905 N.W.2d 439, 446 (Mich. Ct. App. 2017)

(holding that a ban on firearms on university property, which is a sensitive place, "does not

burden conduct protected by the Second Amendment"). The *Heller* Court was clear that its

list of presumptively lawful firearm regulations "does not purport to be exhaustive." 554

U.S. at 627 n.26. In other words, "the Supreme Court in *Heller* indicated that certain

'sensitive places' . . . are categorically unprotected [by the Second Amendment]." *Wade*,

905 N.W.2d at 445. For the reasons articulated below, the State Fairgrounds are a sensitive

place, and Rule 1.24's prohibition on dangerous weapons does not violate the Constitution.

---

Legislature's later decision to waive sovereign immunity by statute in some circumstances does not alter the applicability of the Eleventh Amendment in the Section 1983 context.

First, to the extent the State Fairgrounds are private property, Plaintiffs cannot state a claim under Section 1983 for violation of the Second Amendment because the Second Amendment "does not give an individual a right to carry a firearm on [another's] premises against the owner's wishes[.]" *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1266 (11th Cir. 2012), *cert. denied*, 568 U.S. 1088 (2013).

Second, if the Fairgrounds are not private property, because Rule 1.24 applies to buildings and other structures on the State Fairgrounds, it is plainly within the limits established by *Heller. See* 554 U.S. at 626 ("government buildings" are sensitive places); *Bonidy v. U.S. Postal Serv.*, 790 F.3d 1121, 1125 (10th Cir. 2015) (holding that prohibition on firearms in post office buildings does not violate the Second Amendment).

Third, other courts have interpreted *Heller*'s reference to buildings to encompass the property owned and managed by the entity. For example, in *GeorgiaCarry.org, Inc. v. United States Army Corps of Engineers*, the Northern District of Georgia held that the Army Corps of Engineers did not violate the Second Amendment by prohibiting guns on outdoor recreational property owned and managed by the Corps because although such property "is more expansive than just a 'building,' there is no reason to doubt that the [challenged regulation] falls squarely within the existing 'laws forbidding the carrying of firearms in sensitive places' referenced in *Heller*." 212 F. Supp. 3d 1348, 1362, 1366-67 (N.D. Ga. 2016) (quoting *Heller*, 550 U.S. at 626). Similarly, in *Bonidy v. United States Postal Service*, the Tenth Circuit held that the Postal Service's regulation banning firearms was constitutional even in a parking lot abutting post offices because the parking lot "should be considered as a single unit with the postal building itself to which it is attached

and which it exclusively serves." 790 F.3d at 1125; *see also United States v. Class*, 930 F.3d 460, 464 (D.C. Cir. 2019) (prohibition on firearms in the vicinity of the United States Capitol does not violate the Second Amendment).

The State Fairgrounds are owned and managed by the Society and are akin to the buildings and surrounding areas identified as sensitive places by the *GeorgiaCarry.org* and *Bonidy* cases. *See* Minn. Stat. § 37.01 (reflecting the conveyance of the State Fairgrounds to the Society); Minn. Stat. § 37.14 ("The custody, management, and control of the fairgrounds and all fairgrounds structures are vested in the society as a department of the state[.]"). Just as the Postal Service is constitutionally permitted to ban firearms to serve its "important interest in creating a safe environment for its patrons and employees," *Bonidy*, 790 F.3d at 1127, the Society does not violate the Constitution when it deems it "necessary and proper for the government of the fairgrounds, and for the protection, health, safety, and comfort of the public on the fairgrounds" to prohibit dangerous weapons on the premises. (Rule 1.24 at 2.)

Finally, other courts have identified as sensitive places locations which are likely to attract large, dense crowds or groups of children. Sensitive places include county property, including county fairgrounds, because these locations are "gathering places where high numbers of people might congregate." *Nordyke v. King*, 563 F.3d 439, 459 (9th Cir. 2009), *vacated on other grounds by* 611 F.3d 1015 (9th Cir. 2010).[5] City-owned parks are

---

[5]      *Nordyke* was decided after *Heller* but before the Supreme Court's decision in *McDonald v. City of Chicago*, 130 S. Ct. 3020, (2010). After *McDonald*, the Ninth Circuit vacated its 2009 *Nordyke* opinion and remanded. 611 F.3d 1015 (9th Cir.2010). Ultimately, the Ninth Circuit concluded that the challenged ordinance did not violate the Second

sensitive places because there is "no logical distinction between a school on the one hand and a community center where educational and recreational programming for children is also provided on the other" and "[j]ust as the Federal Courts do not want civilians entering into courthouses with weapons, the City does not want those with firearms entering certain parks where children and youth are likely present." *Warden*, 697 F. Supp. 2d at 1229 (granting motion to dismiss). Like the schools identified by the Supreme Court as sensitive places in *Heller*, 554 U.S. at 627, and the parks deemed sensitive places in *Warden*, 697 F. Supp. 2d at 1229, the State Fair is heavily attended by children. (*See* Rule 1.24 at 1.) And like county fairgrounds where "high numbers of people" gather, *Nordyke*, 563 F.3d at 459, the State Fair "attracts large crowds," *Heffron*, 452 U.S. at 650.

In other words, the Society's decision to prohibit dangerous weapons on its own property during an event that is attended by large numbers of people, including children, makes good sense and is within the realm of permissible Second Amendment restrictions contemplated by the Court in *Heller*. Accordingly, the Court should find the State Fair is a sensitive place and that the Society may constitutionally prohibit firearms there. On the basis of this dispositive legal issue, the Court should dismiss Plaintiffs' Section 1983 claim alleging violation of the Second Amendment.

---

Amendment as applied. *See* 681 F.3d 1041 (9th Cir. 2012) (en banc). Even so, the 2009 panel's sensitive-places analysis has been recognized and applied by other courts. *See, e.g.*, *United States v. Redwood*, No. 16 CR 00080, 2016 WL 4398082, at *5 (N.D. Ill. Aug. 18, 2016); *Teixeira*, 2013 WL 707043, at *5; *Hall v. Garcia*, No. C 10-03799 RS, 2011 WL 995933, at *2 n.2 (E.D. Cal. Mar. 17, 2011).

C.     **Rule 1.24 Survives Intermediate Scrutiny.**

Alternatively, even if the Fair is not a sensitive place, Rule 1.24 is still a permissible restriction under the Second Amendment. The Eighth Circuit has not clearly articulated what test applies to a challenge under the Second Amendment. *See Adams*, 914 F.3d at 607-08 (Kelly, J., concurring in the judgment). Most courts, however, have applied intermediate scrutiny to Second Amendment restrictions which, like Rule 1.24, do not implicate the right to self-defense of the home and do not constitute a total prohibition on gun possession. *Id.*; *e,g,*, *Silvester v. Harris*, 843 F.3d 816, 821 (9th Cir. 2016) (waiting period for purchase and delivery of firearms); *Heller v. Dist. of Columbia*, 670 F.3d 1244, 1257-58 (D.C. Cir. 2011) (gun-registration laws); *Kachalsky v. Cty. of Westchester*, 701 F.3d 81, 92 (2d Cir. 2012) (regulations on carrying firearms in public); *United States v. Marzzarella*, 614 F.3d 85, 97 (3d Cir. 2010) (ban on possession of firearms with no serial numbers). The application of intermediate scrutiny is especially appropriate here because Rule 1.24 is not an "act of governance" but a "managerial action affecting only [Society] owned lands." *See GeorgiaCarry.org*, 212 F.Supp.3d at 1367, 1368 (applying the "lowest possible level of constitutional scrutiny" (citing *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 598 (2008)).

Rule 1.24 survives intermediate scrutiny review if it is "substantially related" to an important objective. *See Clark v. Jeter*, 486 U.S. 456, 461 (1988). In the First Amendment context, the United States Supreme Court has already established that the Society has a substantial government interest in the safety of persons attending the State Fair given, among other factors, that the "Fair attracts large crowds." *Heffron*, 452 U.S. at 649

(approving the Society's policy of confining certain First Amendment activities to fixed locations). The State Fair's prohibition on dangerous weapons is substantially related to the important interest of regulating safety because the Rule prevents fairgoers from bringing guns to the State Fair, thereby protecting the safety of other fairgoers, including children. *See Bonidy*, 790 F.3d at 1126-29 ("[T]he regulation [banning guns on all postal service premises nationwide] as a whole is substantially related to the USPS's important interest in patron and employee safety."). Therefore, the State Fair's prohibition of firearms does not violate the Second Amendment.

    **D.**    **Rule 1.24 Also Survives Strict Scrutiny.**

Even if this Court were to apply a more stringent strict-scrutiny standard, the Fair's dangerous-weapon prohibition is constitutional. To survive strict scrutiny, the challenged rule must serve a "compelling" interest and be narrowly tailored to achieve that interest. *Brown v. Ent. Merch. Ass'n*, 564 U.S. 786, 799 (2011). A law is narrowly tailored if it is the "least restrictive means" to address the articulated interest. *State v. Hatch*, 962 N.W.2d 661, 664 (Minn. 2021) (cleaned up) (quoting *Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (1989)). "The narrow tailoring requirement, however, does not require exhaustion of every conceivable alternative, nor does it require a dramatic sacrifice of the compelling interest at stake.'" *Id.* (quoting *In re Welfare of Child of R.D.L.*, 853 N.W.2d 127, 135 (Minn. 2014)). A statute is narrowly tailored "[s]o long as the means chosen are not substantially broader than necessary" to achieve the interest. *Id.* (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 800 (1989)).

The Fair has a compelling interest in protecting the safety of its attendees. *See* Minn. Stat. § 37.16 (empowering the Society to make rules for the "protection, health, safety, and comfort of the public on the fairgrounds"); *Hatch*, 962 N.W.2d at 664 (explaining that a "compelling interest in protecting the general public from gun violence is self-evident"). Further, Rule 1.24 is narrowly tailored to achieve that interest. The Rule applies only to the State Fairgrounds, a limited geographic space used for primarily recreational and entertainment purposes. *See* Minn. Stat. § 37.01 (describing the Fairgrounds and the purposes of the Society). Plaintiffs are not required to attend the State Fair and are free to carry firearms at any other time and in any other place to the extent permitted by law. Rule 1.24 further allows for the Society to make exceptions to the prohibition on dangerous weapons "in the safe conduct of State Fair business, exhibitions, or shows." The restriction imposed by Rule 1.24 is "not substantially broader than necessary" to achieve the Fair's compelling interest in protecting the safety of fairgoers, and thus it survives even a strict scrutiny analysis. *See Hatch*, 962 N.W.2d at 665.

## II.   Count 2 Does Not Plead Any Cause of Action.

Plaintiffs' claim in Count 2 is brought under Minnesota's Uniform Declaratory Judgments Act ("MUDJA"), Minn. Stat. Ch. 555. As the Ramsey County District Court correctly recognized in its order denying Plaintiffs' motion for temporary injunction, the MUDJA is not a cause of action and, to succeed on any claim under that statute, Plaintiffs must "present a substantive cause of action that would be cognizable in a nondeclaratory suit." (*See* (ECF No. 2-27, at 10-11) (citing *Weavewood, Inc. v. S&P Home Investment, LLC*, 821 N.W.2d 576, 579 (Minn. 2012); *Zweber v. Credit River Twp.*, 882 N.W.2d 605,

617-18 (Minn. 2015) (dissent); *Jama v. Mayo Clinic, et al.*, No. A16-1445, 2017 WL 1842840, at *4 (Minn. Ct. App. May 8, 2017); *Ryan v. Hennepin Cty.*, 29 N.W.2d 385, 387 (Minn. 1947))). Because Count II does not plead a cause of action, it must be dismissed.

## III.    Plaintiffs' Mandamus Claims Fail to State a Claim for Relief.

"Mandamus is an extraordinary remedy that is available only to compel a duty clearly required by law." *N. States Power Co. v. Minnesota Metro. Council*, 684 N.W.2d 485, 491 (Minn. 2004) (cleaned up); *see also Protégé Biomedical, LLC v. Duff & Phelps Sec., LLC*, No. CV 19-3152 (JRT/HB), 2020 WL 5798516, at *8 (D. Minn. Sept. 29, 2020) (dismissing state-law mandamus claim because the underlying claims were not viable). Plaintiffs assert that the State Fair "had a duty to refrain from enacting laws, ordinances, or rules which convene Minnesota State law" and seek a writ of mandamus "compelling Defendants' compliance with Minnesota law, specifically, a writ enjoining Defendants from enforcing [Rule 1.24]" as well as mandamus damages. (Am. Compl. ¶¶ 108, 113.) Because Plaintiffs' allegations and desired relief are inconsistent with the necessary prerequisites for the issuance of a writ of mandamus, and because the Society has not enacted any rule that contravenes Minnesota law, their mandamus claims must be dismissed.

### A.    Plaintiffs Seek to Misuse Minnesota's Mandamus Statute.

To state a claim for mandamus relief, a plaintiff must allege that "the defendant: (1) failed to perform an official duty clearly imposed by law, (2) that, as a result, the petitioner suffered a public wrong specifically injurious to the petitioner; and (3) that there is no other adequate legal remedy." *N. States Power Co.*, 684 N.W.2d at 491. Plaintiffs

have failed to state a claim for mandamus relief because (1) Plaintiffs do not seek to force the Society to perform a duty, (2) Plaintiffs have not alleged the existence of a clear and complete legal right to the act demanded, and (3) Plaintiffs cannot use mandamus to control the Society's exercise of discretion.

First, Plaintiffs' mandamus claim fails because it does not seek to force the Society to perform any particular duty. "Whether mandamus or injunction is the proper remedy usually depends on whether the party demanding relief seeks to compel [the defendant] to do something it is required to do by law or to prevent it from doing something which is prohibited by law." *State ex rel. Sholes v. Univ. of Minn.*, 54 N.W.2d 122, 129 (Minn. 1952) (footnote omitted); *see also* Minn. Stat. § 586.01 ("The writ of mandamus may be issued . . . *to compel performance* of an act[.]" (emphasis added)). Plaintiffs make plain in their Amended Complaint that they are not seeking to compel the State Fair to perform some affirmative duty; instead, the Plaintiffs seek an order that the Defendants refrain from doing something—namely, enforcing the Society's prohibition on dangerous weapons at the Fair. (*See* Am. Compl. ¶ 108–09, 113.) Put another way, Plaintiffs seek an injunction dressed in mandamus's clothing.

Second, "[m]andamus will issue only when the petitioner has shown the existence of a legal right to the act demanded which is so clear and complete as not to admit any reasonable controversy." *Day v. Wright Cty.*, 391 N.W.2d 32, 34 (Minn. Ct. App. 1986). Plaintiffs seek to enforce the Society's purported duty to refrain from enforcing Rule 1.24, but nothing in any Minnesota law imposes such a duty not to enforce the Rule, even if improperly adopted. *Cf. Adams v. Harpstead*, 947 N.W.2d 838, 846 (Minn. Ct. App. 2020)

(affirming denial of mandamus relief because the law did not impose any duty on the agency to correct or clawback data illegally released under the Minnesota Government Data Practices Act).

Third, mandamus cannot be used to control how the Society exercises its discretion about what rules to adopt or whether or when to enforce its rules. Although mandamus can be used to compel the exercise of discretion when required by law, "a writ of mandamus 'does not control the particular manner in which a duty is to be performed and does not dictate how discretion is to be exercised.'" *Houck v. E. Carver Cty. Schs.*, 787 N.W.2d 227, 232 (Minn. Ct. App. 2010) (quoting *Mendota Golf, LLP v. City of Mendota Heights*, 708 N.W.2d 162, 171 (2006)). Here, the Society has exercised its discretionary rulemaking authority over the State Fairgrounds, conferred by Minn. Stat. Ch. 37, to prohibit dangerous weapons at the State Fair. Moreover, Rule 1.24 itself grants the Society discretion in its enforcement by allowing the Society to make exceptions as appropriate "in the safe conduct of State Fair business, exhibitions, or shows." (Rule 1.24.) Minnesota law has, for more than one hundred years, established that mandamus cannot be used to second guess discretionary judgments. *State ex rel. Early v. Wunderlich*, 175 N.W. 677, 680 (Minn. 1920) ("Mandamus does not perform the office of a writ of error[.]").

### B. Plaintiffs' Mandamus Claim Fails because Rule 1.24 is Consistent with Minnesota Law.

Even if Plaintiffs' allegations and relief sought were generally consistent with mandamus relief, their mandamus claim fails because Rule 1.24 does not conflict with

Minnesota law. *Neitzke*, 490 U.S. at 326 (explaining that a motion to dismiss is properly granted when the claim fails "on the basis of a dispositive issue of law").

>    **1.    The Prohibition on Dangerous Weapons at the State Fair Is a Valid Exercise of the Society's Broad Authority Over the Fairgrounds.**

The Minnesota Legislature has expressly delegated to the Society extraordinarily broad authority to "manage[] and control" the State Fairgrounds. *See* Minn. Stat. § 37.14. For example, the Society has the specific power to "license and regulate . . . privileges on the fairgrounds[.]" Minn. Stat. § 37.17, subd. 1. Further, the Society "may make *all* bylaws, ordinances, and rules consistent with law *which it considers necessary or proper* for the government of the fairgrounds and all fairs to be held on them, and for the *protection, health, safety, and comfort of the public on the fairgrounds*." Minn. Stat. § 37.16 (emphasis added). The Society may also appoint peace officers—or contract for police service and protection—to enforce its bylaws, ordinances, and rules on the Fairgrounds. Minn. Stat. § 37.20. Where the Minnesota Legislature has "so expansively conferred police power," it "restrict[s] that power only with express . . . terms . . . using unmistakable language." *State v. Eide*, 898 N.W.2d 290, 296 (Minn. Ct. App. 2017) (concerning the authority of the Metropolitan Airports Commission to regulate firearms).

In Chapter 37, the Legislature has expressed its clear, unmistakable intent that the decision-making authority relating to how best to promote and enhance the health and safety of the fair-going public is within the powers and duties of the Society. Nowhere has the Legislature expressly and unmistakably limited the Society's power to enact and enforce bylaws, ordinances, or rules necessary for the health and safety of the public on

the Fairgrounds, including with respect to firearms. Prohibiting dangerous weapons at the

State Fair is entirely consistent with the Society's statutory authority to provide "for the

protection, health, safety and comfort of the public on the fairgrounds." Minn. Stat. § 37.16.

### 2.    Section 471.633 Does Not Preempt the Society's Rule.

Plaintiffs suggest that Minn. Stat. § 471.633 preempts the Society's prohibition on

dangerous weapons. (Am. Compl. ¶¶ 3, 17, 126(e)(iii)(1), (3).) However, Minn. Stat.

§ 471.633 does not apply to the Society. That section preempts the authority of only cities,

counties, towns, municipal corporations and "other governmental subdivision[s]." Minn.

Stat. § 471.633; *see Eide*, 898 N.W.2d at 294.[6] Plaintiffs allege that the Society falls within

§ 471.633's catchall category of "other governmental subdivision." This legal conclusion

need not be credited on a motion to dismiss, *Brown*, 628 F.3d at 459, and, as a matter of

law, the Society is not a governmental subdivision.

The Minnesota Court of Appeals examined the reach of Minn. Stat. § 471.633 in

*State v. Eide*. There, the Court of Appeals determined that the Metropolitan Airports

Commission ("MAC") was not a governmental subdivision and, therefore, Section 471.633

did not limit the MAC's authority to regulate firearms in the airport's screening area. 898

N.W.2d at 297-98. The *Eide* Court observed that Minn. Stat. § 471.633 does not contain a

---

[6]    Plaintiffs also suggest that Sections 471.633 and 624.717 prohibit Ramsey County and its Sheriff from enforcing the Society's prohibition on firearms. (*See* Am. Compl. ¶ 126(e)(3), (4).) This argument misses the mark. These statutes limit only a county's authority to regulate firearms, but they do not prohibit a county from enforcing valid regulations that are not preempted. The Society's rule does not constitute regulation by Ramsey County.

definition of "governmental subdivision" and that there is no generally applicable definition of that term. *Id.* at 294. Although Minnesota statutes adopt varying definitions of governmental subdivision, "when the legislature wants to designate an entity as a 'governmental subdivision,' it generally does so expressly and for the purpose of particularly specified provisions." *Id.* at 295. For this reason, Section 471.633's silence regarding its application to the MAC weighed in favor of holding that the MAC's regulation of firearms was not preempted. *Id.* at 294-95.

The *Eide* Court also applied the doctrine of *ejusdem generis*[7] to bolster its conclusion. "Each of the listed entities in section 471.633 has the character of a residential community." *Id.* at 295. The MAC, by contrast, "much more closely resembles an administrative agency than a local residential body." *Id.* at 296. The Court of Appeals also examined the MAC's rulemaking and enforcement authority:

> As we have discussed in the broader scheme, the legislature granted extensive authority to the MAC to enact ordinances, even empowering the MAC to create a police department to enforce its ordinances. We are persuaded that, after it so expansively conferred police power to the MAC, the legislature would restrict that power only with express or at least more clear terms. That is, we presume that if the legislature intended to carve from the MAC's broad authority the power to prohibit people from putting firearms into security-screening equipment or otherwise to regulate firearms at the airport, it would have said so using unmistakable language.

---

[7]    Under the doctrine of *ejusdem generis* (Latin for "of the same kind"), "when a general word or phrase follows a list of specific persons or things, the general word or phrase will be interpreted to include only persons or things of the same type as those listed." *Roquemore v. State Farm Mut. Auto. Ins. Co.*, 610 N.W.2d 694, 696 (Minn. Ct. App. 2000) (internal quotation omitted); *see also* Minn. Stat. § 645.08(3) ("[G]eneral words are construed to be restricted in their meaning by preceding particular words[.]").

*Id.*

Each and every point of the *Eide* Court's analysis regarding the MAC applies with equal or greater force to the Society. First, Minn. Stat.§ 471.633 does not define the Society as a "governmental subdivision." In fact, there is no language *anywhere* in Minnesota Statutes defining the Society as a "governmental subdivision" for *any* purpose. The Legislature has declared that the Society "is detached" from any city or political subdivision. Minn. Stat. § 37.01.

Second, unlike the bodies expressly limited by Section 471.633, the Society does not have the characteristics of a residential community. *Eide*, 898 N.W.2d at 295. The Society's statutory purposes are wholly unrelated to maintaining a residential community. Instead, the Society's "public purposes" are:

> (1) exhibiting under the management and control of the society, at annual fairs and at other times determined by the [S]ociety, the agricultural, stock-breeding, horticultural, mining, mechanical, industrial, and other products and resources of the state, including proper exhibits and expositions of the arts, human skills, and sciences; and (2) other uses and purposes determined by the State Agricultural Society, including the leasing of parts of the State Fairgrounds.

Minn. Stat. § 37.01.

Third, like the MAC, the Legislature has empowered the Society to make rules and to create its own police force to govern its own property. Specifically, the Legislature authorized the Society to make "all" ordinances and rules "which it considers necessary and proper . . . for the protection, health, safety, and comfort of the public on the fairgrounds." Minn. Stat. § 37.16. The Society also has the power to appoint its own peace officers to enforce its ordinances and rules, which *Eide* recognized as an important basis

for the conclusion that Minn. Stat. § 471.633 did not preempt the MAC's authority to ban firearms. *See* Minn. Stat. § 37.20; *see also Eide*, 898 N.W.2d at 296. If the Legislature intended Section 471.633 to limit the Society's longstanding, broad authority, "it would have said so using unmistakable language." *Eide*, 898 N.W.2d at 296.

For these reasons, Minn. Stat. § 471.633 did not prohibit the Society from adopting Rule 1.24.

### 3.    The Society's Rule Is Consistent with the MCPPA.

Plaintiffs suggest that the Society's rule prohibiting dangerous weapons violates Minn. Stat. § 624.714, a portion of the Minnesota Citizens Personal Protection Act ("MCPPA"). (Am. Compl. ¶¶ 4, 126(e)(iii)(2), (4).) Plaintiff Hauptman alleges that she has a permit to carry; to the extent that Hauptman believes her permit entitles her to carry a pistol in whatever public place she pleases under the MCPPA, she is simply wrong.[8] Rather than creating a "right" for permitholders to carry pistols in public, Minn. Stat. § 624.714, subd. 1a makes it a crime for a "person, other than a peace officer . . . [to] carr[y], hold[], or possess[] a pistol in . . . on or about the person's clothes or the person, or otherwise in possession or control in a public place[.]" The statute carves out of the scope of this crime those who have "first obtained a permit to carry the pistol" under the MCPPA. *Id.* There is no language in the MCPPA that creates an express and affirmative right for permitholders to carry a pistol anywhere in public. If the Legislature had intended to create an affirmative right for a permitholder to carry a pistol in any public place, it could

---

[8]    The Amended Complaint does not allege that Christopher holds a permit. Accordingly, Plaintiffs' argument regarding Minn. Stat. § 624.714 does not apply to him.

have done so. Indeed, other state legislatures have done just that. *See, e.g.*, Wis. Stat. § 175.60(2g)(a) ("A licensee or an out-of-state licensee may carry a concealed weapon anywhere in this state[.]"). The Society's prohibition on dangerous weapons at the State Fair does not nullify or obviate this defense to the crime created by Minn. Stat. § 624.714, subd. 1a or any other criminal statute that exempts permitholders.

### 4.    Section 624.717 Does Not Preempt the Society's Rule.

The Amended Complaint suggests that Minn. Stat. § 624.717 supersedes the Society's rule against dangerous weapons. (Am. Compl. ¶¶ 3, 126(e)(iii)(2), (4).) That statute provides that the MCPPA "shall be construed to supersede municipal or county regulation of the carrying or possessing of pistols[.]" As discussed above, the State Fair is fundamentally different than a county, a municipality or other residential communities. Section 624.171 does not supersede the Society's ban on guns at the Fair.

### C.    Plaintiffs' Claim for Mandamus Damages Fails.

Plaintiffs plead a separate count of mandamus damages. (Am. Compl. ¶¶ 114-17.) This is not a separate claim. The mandamus statute merely provides that "[a] plaintiff who is given judgment[] shall recover the damage sustained, together with costs and disbursements." Minn. Stat. § 586.09. Because Plaintiffs' mandamus claim fails, its claim for mandamus damages fails as well.[9]

---

[9]    Because MGOC is an associational plaintiff and because there is no indication that the Minnesota Legislature intended to allow associational plaintiffs to seek damages under the mandamus statute, MGOC lacks standing to seek damages. *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 553 (1996) (noting that the Supreme Court's decisions "have been understood to preclude associational standing when an organization seeks damages on behalf of its members"); *see also, e.g.*, *Telcomm. Rsch.*

IV.    **Plaintiff's Breach of Contract Claim Must Be Dismissed.**

Plaintiffs' final count—purporting to allege a claim for breach of contract—fails to state a claim upon which relief can be granted and must be dismissed. Plaintiffs allege that they entered into a contract with the Society when they paid for their tickets to the 2021 State Fair. (Am. Compl. ¶ 119-21.) They claim that the Society breached this agreement when it "attempted enforcement of" Rule 1.24, which Plaintiffs characterize as an "illegal provision" of the agreement. (Am. Compl. ¶ 122.) The consequence of the inclusion of this purportedly illegal term, Plaintiffs allege, is that it must be severed from the agreement, leaving Defendants in breach. This convoluted claim fails.

A.    **Rule 1.24 Is Not Illegal Nor Is It Void Against Public Policy.**

Plaintiffs' contract claim fails to state a claim because Plaintiffs' legal conclusion that Rule 1.24 is "illegal" is simply incorrect. Rather, as discussed above, Rule 1.24 is consistent with federal and Minnesota law. The Rule does not violate the Constitution, it is not preempted or superseded by any Minnesota statute, and it is consistent with the MCPPA.

B.    **Plaintiffs Have Not Alleged a Breach of Any Particular Term of Any Contract.**

It is unclear what terms Hauptman alleges are included in any contract between her and the Society or how the Society breached by "attempt[ing] [to] enforce[]" an illegal provision of the contract. Breach is an essential element of Plaintiffs' contract claim, *see*

*& Action Ctr. v. Allnet Commc'ns Servs.*, 806 F.3d 1093, 1094-95 (D.C. Cir. 1986) ("[L]ower federal courts have consistently rejected association assertions of standing to seek monetary, as distinguished from injunctive or declaratory, relief on behalf of the organization's members" (collecting cases)).

*Commercial Assocs., Inc. v. Work Connection, Inc.*, 712 N.W.2d 772, 782 (Minn. Ct. App. 2006), and the failure to identify what term was breached or how the Society breached it is fatal to Plaintiffs' contract claim. *Cf. 40 Ventures LLC v. Minnesquam,* LLC, No. A19-2082, 2020 WL 5507887, at *4 (Minn. Ct. App. Sept. 14, 2020) ("To state a claim against the members for breach of the [agreement], 40 Ventures must allege *how* the other members breached the [agreement].").

### C.   Plaintiff Hauptman Alleges, in Essence, that *She* Breached the Alleged Agreement.

Even if Plaintiff Hauptman[10] alleged that the Society failed to perform a material obligation of some unknown contract with her by denying her entry to the State Fair, her contract claim still fails. Plaintiffs' allegations assume that Rule 1.24's prohibition on dangerous weapons at the State Fair was incorporated into any contract between them. (*See* Am. Compl. ¶¶ 123-24.) Hauptman's admitted insistence that she be permitted to bring a gun into the State Fair would be a breach of this purported term. (*Id.* ¶¶ 8, 61.) Plaintiffs attempt to plead around this problem by asserting that the State Fair's prohibition on dangerous weapons is void as against public policy. Plaintiffs misinterpret Minnesota contract law in this regard.

The Minnesota Supreme Court has expressly acknowledged that an illegal contract is not necessarily void. *See Isles Wellness, Inc. v. Progressive N. Ins. Co.*, 725 N.W.2d 90,

---

[10]   As an associational Plaintiff, MGOC does not have standing to assert a contract claim for damages. *See supra* n.9. Nor does Christopher even allege that he was denied entry to the State Fair; to the contrary, he alleges that he decided not to attend because he would be unable to carry a firearm there. (Am. Compl. ¶ 7.)

92 (Minn. 2006). A contract is only void if "the illegality has so tainted the transaction that enforcing the contract would be contrary to public policy." *Id.* at 93. Courts look to whether a party "knowingly and intentionally violated" the law in forming the contract. *See W. Nat. Mut. Ins. Co. v. Stand Up Mid-Am. MRI, Inc.*, No. A10-566, 2010 WL 4825320, at *4-5 (Minn. Ct. App. Nov. 30, 2010) (refusing to find a contract void where "the undisputed evidence shows that respondent did not knowingly and intentionally violate the [law]"). The Society did not knowingly and intentionally violate the law. The State Fair's Rule 1.24 was expressly designed to allow the Society to meet its statutory obligation to provide for the "protection, health, safety, and comfort of the public on the fairgrounds." *See* Minn. Stat. § 37.16. (*See also,* Rule 1.24.) For this reason, Plaintiffs' breach of contract claim must be dismissed.[11]

## **CONCLUSION**

For the reasons set forth above, Defendant's motion to dismiss should be granted.

---

[11]    Moreover, in the absence of any indication that the parties mutually intended provisions of some contract to be severable, the consequence is that the entire contract is void. *Cf. Schultz v. Stiernagle*, 270 N.W.2d 269, 271 (Minn. 1978) (refusing to sever provisions of a contract and enforce only portions of it where the contract was legally void). "A void contract is no contract at all; it binds no one and is a mere nullity." *In re Donnay*, 184 B.R. 767, 784 (Bankr. D. Minn. 1995); *see Commercial Assocs., Inc.*, 712 N.W.2d at 782 (existence of a contract is an essential element of a contract claim).

Dated: October 22, 2021

*/s/ Leah C. Janus*

Leah C. Janus (#0337365)
David R. Marshall (#0184457)
Pari I. McGarraugh (#0395524)
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis MN 55402-1425
Phone: (612) 492-7000
ljanus@fredlaw.com
dmarshall@fredlaw.com
pmcgarraugh@fredlaw.com

***Attorneys for Defendant State Agricultural Society***

74000269 v13