UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

REVEREND TIM CHRISTOPHER, et al.,

            Plaintiffs,        Civil No. 21-2292 (JRT/ECW)

v.

                          **ORDER GRANTING THE DEFENDANT'S MOTION TO DISMISS**

RAMSEY COUNTY, et al.,

            Defendants.

---

Andrew Stephen Dosdall and Scott M. Flaherty, **TAFT STETTINIUS & HOLLISTER LLP**, 80 South 8th Street, Suite 2200, Minneapolis, MN 55402, for plaintiffs.

David R. Marshall, Leah C. Janus, and Pari McGarraugh, **FREDRIKSON & BYRON, PA**, 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402 for defendant State Agricultural Society.

In 2021 the State Agricultural Society (the "Society"), which oversees the Minnesota State Fair, promulgated Rule 1.24 prohibiting fairgoers from carrying firearms on the Fairgrounds during the State Fair. Plaintiffs Reverend Tim Christopher and Sarah Hauptman both obtained tickets for the 2021 Minnesota State Fair, but chose not to attend, or were not allowed to attend, because they refused to do so without their firearms. Christopher, Hauptman, and the Minnesota Gun Owners Caucus (collectively, "Plaintiffs") brought an action in state court against the Society. The Plaintiffs seek a writ of mandamus compelling the Society to revoke Rule 1.24 and a declaratory judgment under Minnesota's Uniform Declaratory Judgment Act. They also allege constitutional

claims under 42 U.S.C. § 1983 and a breach of contract claim.  Because the Plaintiffs' Petition for a Writ of Mandamus and claim for declaratory judgment are procedurally defective, the Court will grant the Society's Motion to Dismiss those claims.  Because the Plaintiffs fail to show that the Society violated their constitutional rights, the Court will grant the Society's Motion to Dismiss the §1983 claim.  And because the Plaintiffs cannot establish the illegality of the Rule 1.24, the Court will grant the Society's Motion to Dismiss the Breach of Contract claim.

## BACKGROUND

### I.    FACTS

The Society is a public corporation created by the Minnesota Legislature.  (Am. Compl. at ¶¶ 27, 28, Oct. 15, 2021, Docket No. 1-4); *See generally* Minn Stat. § 37.01 (establishing the Society).  The Society manages the Minnesota State Fair and the State Fairgrounds.  *Id.*  State law permits the Society to make bylaws, ordinances, and rules "consistent with law which it considers necessary or proper for the government of the fairgrounds and all fairs to be held on them, and for the protection, health, safety, and comfort of the public on the fairgrounds."   Minn. Stat. § 37.16.  Violating the Society's rules, bylaws, or ordinances is a misdemeanor.  *Id.*

Prior to the 2021 State Fair, the Society posted on the State Fair website that fairgoers were prohibited from bringing any weapons, including pistols, to the Fair.  (*Am. Compl.* at ¶¶ 78–80.)  On August 17, 2021, after the Plaintiffs filed their Complaint, the Society officially promulgated Rule 1.24, which denied admission to the Fair to persons

possessing personal pistols, even if possessed in compliance with Minnesota law. (*Id.* at ¶ 40.)

Both Christopher and Hauptman are licensed gun owners who frequently carry their pistols on their persons but did not attend the 2021 State Fair. (*Id*. at ¶¶ 7–8, 62.) Christopher did not attend the State Fair because he could not bring his firearm with him while Hauptman attempted to attend the State Fair while carrying her firearm but was denied entry. (*Id.* at ¶¶ 61, 62, 86.)

## II. PROCEDURAL HISTORY

The Plaintiffs filed suit in state court alleging that the Society, Ramsey County, and the Ramsey County Sheriff, violated their rights by promulgating Rule 1.24 and alleging that the Society violated the Minnesota Data Practices Act. (Compl. Oct. 15, 2021, Docket No. 1-1.)[1] Plaintiffs requested declaratory and injunctive relief and a preliminary injunction. (*Id.*) The state court denied the motion for a preliminary injunction. (Decl. of Pari I. McGarraugh, Ex. 27, Oct. 15, 2021, Docket No. 2-27.) The Plaintiffs then filed an Amended Complaint, removing the Data Practices Act allegation and adding a claim under 42 U.S.C. § 1983. (See Am. Compl.) Thereafter, the Defendants removed the action to federal court. (Notice of Removal, Oct. 15, 2021, Docket No. 1.) The Society now moves to dismiss all of the Plaintiffs' claims. (Mot. to Dismiss, Oct. 22, 2021, Docket No. 5.)

---

[1] Plaintiffs have since voluntarily dismissed Ramsey County and the Ramsey County Sheriff from the action. (Order Granting Dismissal Without Prejudice, Dec. 22, 2021, Docket No. 31).

-3-

**DISCUSSION**

**I.      STANDARD OF REVIEW**

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The Court construes the complaint in the light most favorable to the plaintiff, drawing all inferences in the plaintiff's favor. *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). Although the Court accepts the complaint's factual allegations as true and construes the complaint in a light most favorable to the plaintiff, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). In other words, a complaint "does not need detailed factual allegations" but must include more "than labels and conclusions, and a formulaic recitation of the elements" to meet the plausibility standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When considering a motion to dismiss, the Court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials

that are necessarily embraced by the pleadings. *Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 931 (8th Cir. 2012).

## II.  ANALYSIS

Plaintiffs contend that Minnesota law preempts the Society's ability to promulgate any firearm restrictions. "The Legislature of the state of Minnesota recognizes and declares that the Second Amendment of the Unites States Constitution guarantees the fundamental, individual right to keep and bear arms." Minn. Stat. § 624.714, subd. 22. The Legislature made it a crime to hold or possess a pistol on or about their person without first obtaining a permit to carry a pistol. Minn. Stat. § 624.714, subd. 1. The Legislature further barred any "sheriff, police chief, governmental unit, government official, government employee, or other person or body acting under color of law or governmental authority" from changing, modifying, or supplementing the criteria and procedures to obtain a permit or to limit the exercise of the permit to carry. *Id.* at subd. 23.

Minnesota has multiple statutes that restrict the authority of certain other governmental institutions from regulating firearms. Pertinent here are Sections 624.717 and 471.633. Section 471.633 reads:

> The legislature preempts all authority of a home rule charter or statutory city including a city of the first class, county, town, municipal corporation, or other governmental subdivision, or any of their instrumentalities, to regulate firearms, ammunition, or their respective components to the complete exclusion of any order, ordinance or regulation by them

> except that: (a) a governmental subdivision may regulate the discharge of firearms; and (b) a governmental subdivision may adopt regulations identical to state law.

Minn. Stat. § 471.633.

Section 624.717 reads:

> Sections 624.711 to 624.716 shall be construed to supersede municipal or county regulation of the carrying or possessing of pistols and the regulation of Saturday night special pistols.

Minn. Stat. § 624.717.

Plaintiffs assert several claims seeking to establish that the Rule 1.24 is invalid because it is preempted and because it is unconstitutional. The Court will grant the Society's Motion to Dismiss the Plaintiffs' claims because they are procedurally invalid and constitutionally unfounded.

### A.    PETITION FOR WRIT OF MANDAMUS

"Mandamus is an extraordinary remedy that is available only to compel a duty clearly required by law." *N. States Power Co. v. Minnesota Metro. Council*, 684 N.W.2d 485, 491 (Minn. 2004) (cleaned up). Accordingly, to state a claim for mandamus relief, a plaintiff must allege that "the defendant: (1) failed to perform an official duty clearly imposed by law, (2) that, as a result, the [plaintiff] suffered a public wrong specifically injurious to the [plaintiff]; and (3) that there is no other adequate legal remedy." *Id.* The Plaintiffs' Petition for a Writ of Mandamus is procedurally improper because it requests the Court to order government officials to **refrain from action**, whereas mandamus is

used to order government officials to **take action**. *State ex re. Sholes v. University of Minnesota,* 54 N.W.2d 122, 129 (Minn. 1952) (distinguishing mandamus and injunctive relief). Even viewing the Complaint in the light most favorable to the Plaintiffs, it contains no factual allegations that support a reasonable inference that there is no other adequate legal remedy—the appropriate legal remedy to prohibit action is injunctive relief.

The Plaintiffs attempt to argue that the distinction between mandamus and injunctive relief is immaterial because the Minnesota Supreme Court has previously granted mandamus to prohibit unlawful official action and modified the relief requested where mandamus was procedurally inappropriate. *Sholes,* 54 N.W.2d, at 129; *Inter Fac. Org. v. Carlson*, 478 N.W.2d 192, 193 (Minn. 1991). Plaintiffs cite *Sholes* for the contention that an analysis of the form of relief sought with a writ of mandamus is not demanding. In *Sholes*, the Minnesota Supreme Court states, "[w]e need not labor the contention of [defendant] that mandamus is not the proper remedy to control the exercise of its discretionary power or legislative function." *Id.* Moreover, the Plaintiffs assert that the writ of mandamus at issue in *Sholes* "in part, 'prohibit[ed] the use of the University of Minnesota property and facilities in aiding one religion, all religions, or preferring one religion over another, or aiding or permitting any religious activities on the university campus.'" (Pls.' Mem. Opp. Mot. Dismiss, at 21, Nov. 29,2021, Docket No. 23) (quoting *Sholes*, 54 N.W.2d at 129). However, the beginning of the sentence clearly states that the writ commanded the defendant to "adopt and enforce rules and regulations . . .

prohibiting the use of the University of Minnesota property" as such. *Sholes*, 54 N.W.2d at 129. The *Sholes* opinion does not blur the distinction between mandamus relief (commanding the defendant to do something) and injunctive relief (commanding the defendant to refrain from doing something).

Plaintiffs also cite a Minnesota Supreme Court case in which the plaintiff brought an action in the form of a petition for a writ of mandamus when the appropriate procedural avenue was a claim for declaratory judgment. *Inter Fac. Org. v. Carlson*, 478 N.W.2d 192, 193 (Minn. 1991). The Court stated, "[w]hile the petition and the relief it requests are procedurally inappropriate, we nevertheless decline to remand this matter for further proceedings . . . because of the untoward delay which would result. Instead, we modify the trial court's decision, recasting it as a judicial declaration[.]" *Id.* *Carlson* is distinguishable because no untoward delay will result from the Court dismissing the Plaintiffs' petition as procedurally unsound. Moreover, as discussed below, the Plaintiffs' Complaint fails to adequately allege a cause of action to support a declaratory judgment action. Therefore, the Court will grant the Society's Motion to Dismiss the Petition for a Writ of Mandamus because the petition is procedurally defective.[2]

---

[2] Whether this Court certifies is a matter of its discretion. *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974). Because the Court does not reach the question of the applicability of *Eide* to this case the Court will deny the Plaintiffs' Motion to Certify a Question to the Minnesota Supreme Court.

**B.     DECLARATORY JUDGMENT**

"A complaint requesting declaratory relief must present a substantive cause of action that would be cognizable in a nondeclaratory suit." *Weavewood, Inc. v. S. & P Home Investment, LLC*, 821 N.W.2d 576, 579 (Minn. 2012); *Ryan v. Hennepin Cty.*, 29 N.W.2d 385, 387 (Minn. 1947) ("Injunctive relief is a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief may be granted").

A plaintiff has stated a claim when the well-pleaded facts "give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848–49 (8th Cir. 2014). Under Minnesota's Uniform Declaratory Judgments Act ("MUDJA") courts may grant declaratory judgment where an actual justiciable controversy exists. *Weavewood*, 821 N.W.2d at 579 ("A Declaratory Judgment is a 'procedural device' through which a party's existing legal rights may be vindicated so long as a justiciable controversy exists").

The Minnesota Supreme Court has stated that an actual controversy arises where a claim: "(1) involves definite and concrete assertions of right that emanate from a legal source, (2) involves a genuine conflict in tangible interests between parties with adverse interests, and (3) is capable of specific resolution by judgment rather than presenting hypothetical facts that would form an advisory opinion." *McCaughtry v. City of Red Wing*, 808 N.W.2d 331, 336 (Minn. 2011).

Plaintiffs assert that the Society violated state law by promulgating Rule 1.24 when doing so was preempted by §471.633 and §624.717.  However, Minnesota statutes do "not give rise to a civil cause of action unless the language of the statute is explicit or it can be determined by clear implication."  *Halva v. Minnesota State Colleges & Universities,* 953 N.W.2d 496, 504 (Minn. 2021).  Moreover, courts "are generally reluctant to recognize causes of action when the language of the statute does not expressly provide one."  *Id.* (citation omitted).  Plaintiffs make no effort to show that either §471.633 or §624.717 give rise to a cause of action.  Nor does the language of either statute expressly or impliedly create a private right of action.  As such, the Plaintiffs fail to allege a substantive cause of action sufficient to support Declaratory Judgment under Minnesota law.  Therefore, the Court will grant the Society's Motion to Dismiss the Plaintiffs' claim for Declaratory Judgment.

### C. Section 1983 Claim

Section 1983 provides a private right of action against a "person" who deprives a citizen of federal or statutory rights.  42 U.S.C. § 1983.  As such, Plaintiffs must show that the Society is a "person" under the meaning of § 1983.  The United States Supreme Court has held that states and entities which are "arms of the state" and traditionally protected by Eleventh Amendment immunity are not 'persons' liable to suit under § 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989).

Plaintiffs assert that the Society is an entity capable of being sued under § 1983 for two reasons: (1) the Society waived its Eleventh Amendment immunity by removing the case to federal court, and (2) the Society is a public corporation, and public corporations are municipalities under Minnesota's Municipal Tort Claims Act.

First, whether the Society waived its Eleventh Amendment immunity is irrelevant. In *Will*, the Supreme Court held that that the term "person" in § 1983 was not meant to include states or the arms of a state. *Will*, 491 U.S. at 66–67. While the Court used the Eleventh Amendment to support its conclusion, it explicitly stated that "[t]his does not mean . . . that we think that the scope of the Eleventh Amendment and the scope of § 1983 are not separate issues. Certainly, they are. But in deciphering congressional intent as to the scope of § 1983, the scope of the Eleventh Amendment is a consideration." *Id.* The Society, as an arm of the State, is not a person within the meaning of § 1983.

Second, the Plaintiffs provide no support for their argument that the Society is a municipality under § 1983 simply because it is a municipality for purposes of the Minnesota Municipal Tort Claims Act. A municipality can be held liable under § 1983, where "official action pursuant to official municipal policy of some nature causes a constitutional tort." *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 691 (1978). It is true that "[f]or the purposes of [the Municipal Tort Claims Act], municipality means any city, . . . county, town, public authority, [or] public corporation" and that the Society is a public corporation. Minn. Stat. 466.01; Minn. Stat. §37.01. However, it does

-11-

not necessarily follow that because the Society is a municipality **for the purposes of** a state statute, it is a municipality within the meaning of *Monell*.  Moreover, the Plaintiffs explicitly pled that the Society was an arm of the state which, under *Will*, is not an entity capable of being sued under § 1983.

Regardless of whether the Society is a person subject to suit under § 1983, the Plaintiffs' claim fails on the merits.  If the Society is subject to suit under § 1983, it may only be found liable when it caused a constitutional harm pursuant to an official policy. *Monell*, 436 U.S. at 691.  Rule 1.24 is alleged to violate the Second Amendment because it is the Society's official policy that prevented the Plaintiffs from entering the State Fair while carrying firearms.  But even applying strict scrutiny, Rule 1.24 passes constitutional muster.

Strict scrutiny requires the challenged law to be justified by a compelling government interest and narrowly tailored to achieve that interest.  *State v. Hatch*, 962 N.W.2d 661, 664 (Minn. 2021) (citing *Brown v. Ent. Merch. Ass'n*, 564 U.S. 786, 799 (2011)).  The Society is charged with making rules for the "protection, health, safety and comfort of the public on the fairgrounds" and thus has a compelling interest in protecting the safety of its attendees.  Minn. Stat. §37.16; *See* 664 (the "compelling interest in protecting the general-public from gun violence is self-evident"); *State v. Paige*, 256 N.W.2d 298, 303 (Minn. 1977) (explaining the validity of a statute meant "to prevent the possession of firearms . . . in public places where their discharge may injure or kill

intended or unintended victims."). During the State Fair, the Fairgrounds are a sensitive location with thousands of people and children present in often crowded conditions.[3] As such, protecting the fairground from gunfire is a compelling interest. Further, certain limitations on the Second Amendment, such as the long-standing prohibitions on "the carrying of firearms in sensitive places such as schools and government buildings," are presumptively lawful. *United States v. Adams*, 914 F.3d 602, 605 (8th Cir. 2019) (citing *Heller*, 554 U.S. at 626–27). Rule 1.24 is narrowly tailored to achieve the Society's compelling interest in protecting its attendees. Rule 1.24 is geographically limited to primarily recreational and entertainment spaces. *See* Minn. Stat. § 37.01.

Plaintiffs proffer alternatives to Rule 1.24 such as using separate gates for gun-holders or setting up internal checkpoints to prevent guns from entering certain particularly high-risk places. However, "the narrow tailoring requirement 'does not require exhaustion of every conceivable . . . alternative, nor does it require a dramatic sacrifice of compelling interest at state.'" *See Hatch*, 962 N.W.2d at 664. Plaintiffs' proposals would impose a significant logistical and economic burden on the Society and

---

[3]Several district and appellate courts across the country have held that a place that gathers large crowds and has many children present is a sensitive place like a government building or school. *Bonidy v. United States Postal Service*, 790 F.3d 1121, 1125 (10th Cir. 2015) (stating that the outdoor parking lot abutting a post office was part and parcel with the government building); *Nordyke v. King*, 563 F.3d 439, 459 (9th Cir. 2009) *vacated on other grounds by* 611 F.3d 1015 (9th Cir. 2010) (describing sensitive places as locations that are gathering places where high numbers of people might congregate); *Warden v. Nickels*, 697 F.Supp.2d 1221, 1229 (W.D. Wash. 2010) ("as with a government building or school, a city-owned park where children and youth recreate is a "sensitive place where it is permissible to ban possession of firearms").

require it to dramatically sacrifice its compelling interest by requiring it to set up separate areas in ingress and egress onto the Fairgrounds and by forcing it to permit firearms to be present during the State Fair. As such, Rule 1.24 is not overly broad and complies with the narrow tailoring requirement. The Court will grant the Society's Motion to Dismiss Plaintiffs' § 1983 claim.

### D. Breach of Contract

Lastly, the Plaintiffs allege that they entered into contracts with the Society by purchasing tickets to attend the State Fair. Consequently, the Society allegedly breached its contractual duty by refusing to grant the Plaintiffs entry on unlawful grounds—namely, the Plaintiffs were denied entry based on their legal possession of firearms. Whether a ticket is a contract is disputable. *See Bickett v. Buffalo Bills, Inc.*, 472 N.Y.S.2d 245, 247 (N.Y. Sup. Ct. 1983) ("A ticket is a license and revocable so long as the revocation is not based upon a discriminatory reason infringing upon a person's civil rights.") However, the Court will not engage in that analysis because the Plaintiffs' entire breach claim rests on the unsupported claim that Rule 1.24 is illegal. As noted, the Plaintiffs do not have a private right of action to challenge Rule 1.24. The Court will grant the Society's Motion to Dismiss the Plaintiffs' Breach of Contract claim.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that;

1. The Society's Motion to Dismiss [Docket No. 5] is **GRANTED**,

2. Plaintiffs' Motion to Certify a Question to the Minnesota Supreme Court [Docket No. 18] is **DENIED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  August 12, 2022
at Minneapolis, Minnesota.

                                                JOHN R. TUNHEIM
                                                District Judge
                                                United States District Court